## David McWilliams *et al.*

*v.*

## Richard P. Morgan, Jr.

Injunction—*town plat—dedication.* A person platted a tract of land into town lots and blocks, designating the streets separating the blocks. The plat showed two strips of about fifty feet in width, on each side of the

grounds held by a railway company for right of way, marked "depot." These strips remained unoccupied and uninclosed for a number of years, being used by the public as a passway to and from the depot, until the proprietor of the town erected on one of the strips a crib, and by himself, or tenants, occupied the same: *Held,* that none or all of these acts proved an intention to dedicate these grounds to the public, and the fact that the owner marked these strips "depot," negatives the idea of an intention to dedicate. And there being no dedication to public use, he could not be enjoined from using the grounds for his private use.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES H. WOOD, Judge, presiding.

Mr. L. E. PAYSON, for the appellants.

Mr. HAMILTON SPENCER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The only question presented by this record is, was there a dedication of the strip of land in question, fifty feet in width, to the public use, by Morgan, the defendant?

August 6th, 1853, Morgan conveyed to the Chicago & Mississippi Railroad Co. a right of way, one hundred feet wide, through the tract of land on which the strip of land is situated, and in the deed made provision for the erection and maintenance of a depot thereon, in case a town should afterwards be located on the tract.

About January 30, 1854, Morgan did lay out at that point the town of Dwight, and a plat thereof was recorded in the proper office.

In the center of the town plat there was designated a hexagonal piece of ground, bounded on the east and west by streets named East and West streets, respectively. This piece of ground included within its limits the ground upon which was the right of way, one hundred feet wide, theretofore granted by Morgan to the C. & M. R. R. Co., but not shown by any lines upon the plat, and fifty feet in addition on each side of the right of way ground, making, in all, an irregularly shaped

piece of ground, for the most part about two hundred feet wide and about one thousand feet long, the main track of the C. & M. R. R. Co. marked as running directly through the center.   This tract was marked upon the plat as a single parcel, and recorded with the word "depot" upon it.

The strip of land in question is the east fifty feet, lying between the right of way ground and East street.   At that time the whole of the land upon which the village stands was vacant and uninclosed, having recently been purchased from the Government.

This piece of ground, so marked upon the plat, has remained uninclosed since, and has been used by the public for years for purposes connected with the business of the railway without objection on the part of Morgan, and no taxes have ever been paid on it.

There being no express grant, the evidence of a dedication, if any, must be found in the acts and declarations of the defendant.

There are none such tending to show a dedication to be found since the making of the map, except acquiescence in the use by the public of the vacant and uninclosed portion of the ground, which Morgan had not occasion to make use of himself, which is far from being any satisfactory evidence of an intention to dedicate.     *Warren* v. *The President, etc. of the Town of Jacksonville,* 15 Ill. 236 ; *Kelly* v. *City of Chicago,* 48 Ill. 389.

Indeed, the manner in which the land has been used since the making of the map, disproves the idea of a dedication.

In 1857, the defendant himself erected a corn crib across the entire width of the strip in question, and has since been in the occupation of portions of both strips, both personally and by his tenants, to the exclusion of the public, and claiming to be the owner of the portions so occupied, as also of the residue of the ground.   Since that time, a large portion of the east strip has been continuously occupied by individuals, to the exclusion of the public, without complaint from any

one, so far as appears, except the defendant himself. The strip of land on the west side has, the greater part of it, been exclusively occupied by the railroad company: It is the map or plat alone which must be relied upon as any proof of dedication.

The counsel for the appellee does not deny the proposition, that, where the owner of land causes it to be mapped out into lots, streets, etc., and conveys lots pursuant to such map, he is estopped from denying that he has dedicated to the public the lands marked out on the map as intended for public use. And the only question is, whether this piece of land, marked out as it was upon the map, not sub-divided into lots, having " depot " marked upon it, is designated on the map as devoted to the public use.

The defendant testifies that he made the plat of the town of Dwight, and reserved the two strips of land in question with a view to selling them to the railroad company for a nominal sum, for the enlargement of their depot grounds, when they should have performed the covenants in the deed of the one hundred feet for the right of way, and intended them to remain open for general depot uses, in anticipation of that event.

It might fairly be claimed, then, that the plat designated this as depot grounds, and nothing more; but that is a private, and not a public, use. Depot grounds are the subject of private ownership—the public could not reasonably expect to claim any right in them, however it might be with the railway company.

These complainants insist that, because this piece of ground was marked out and designated as it was upon the plat, they purchased their lots in front of it, on the east side of East street, on the faith that the ground should always remain for the free use and enjoyment of the public, open ground and unincumbered with any buildings; and that the erection of this building by the defendant will be a disappointment of their expectations, raised by the defendant's own acts.

But the representation made by the map to the public was nothing more than that the ground was to be the site of the depot, which was kept good; that did not imply that it was to remain an open common. It would have been entirely compatible with the use of the ground for depot purposes, had the railway company covered it over with structures for the uses of its road, and shut off all passage over it by the public.

Had the intention been, as the complainants claim, that the ground should remain open for public use, it would naturally have been so indicated on the plat, by its not showing any street line between the west line of complainant's lots and the railway track, or its right of way ground. But all along the east side of this strip is marked the line of a street, showing a street of a certain width between complainant's lots and this ground, indicating that the west line of that street was the boundary on the west of the ground designed for public use, and that the land beyond, on the west side of it, and marked as separated from it by the line of the street, was not designed for public use.

Moreover, accompanying the plat was the instrument in writing of the defendant, declaring that he had laid off the land into blocks, lots, etc., as exhibited on the plat, which contains these words: "And the streets and alleys as therein described are hereby donated to the public."

Here is the explicit declaration in writing of the defendant of just what he did dedicate to the public; and under the application of the familiar maxim, *expressio unius est exclusio alterius*, such declaration impliedly negatives the idea of dedicating to the public anything else.

We fail to discover from the map, as well as otherwise, the manifestation of an intention on the part of the defendant to set apart this ground for the use of the public; and we perceive no sufficient reason why the defendant should not be allowed to make use of his own ground in proceeding to erect a building upon it or otherwise, without being enjoined from so doing by these complainants.

The decree is affirmed.                *Decree affirmed.*