## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* WARRUM.

[No. 6,078. Filed December 10, 1907. Rehearing denied April 8, 1908. Transfer denied June 25, 1908.]

1. PLEADING. — *Complaint.* — *Paragraphs.*—*Demurrers.*—*Trial and Findings upon One Paragraph.*—Where the trial is had and finding made upon one paragraph of a complaint, the erroneous overruling of a demurrer to the other paragraph is harmless. p. 182.
2. RAILROADS.—*Highways.*—*Pedestrians.*—Railroad companies in using streets or highways must exercise reasonable care to avoid injury to pedestrians. pp. 184, 191.
3. SAME.—*Highways.*—*Pedestrians.*—*Rights.*—Railroad companies and pedestrians have equal rights on the streets and highways, but owing to the size and weight of cars used and the fact that such cars run upon a fixed track, pedestrians must yield such way for the passage of cars. p. 184.
4. SAME.—*Municipal Corporations.*—*Dedication of Lands.*—Land cannot be dedicated to an individual or private corporation, but must be made to the public. p. 186.
5. MUNICIPAL CORPORATIONS. — *Streets.* — *Dedication.* — *Deeds.* — Where a landowner platted a tract of land into lots, designating the streets thereon and naming one "Railroad" street, and he recorded such plat and sold the lots, the fact that a railroad company built its tracks upon "Railroad" street did not give it any exclusive rights thereto. pp. 186, 197.
6. SAME.—*Streets.*—*Dedication.*—*Acceptance.*—Where a landowner plats a tract of land, designates streets thereon, and records such plat, the use of such streets by pedestrians only, constitutes an acceptance of such grant sufficient to constitute a dedication thereof for public use. p. 186.
7. RAILROADS.—*Use of Streets.*—*Prescription.*—The use of a street

for over fifty years by a steam railroad company gives it a pre-
scriptive right as against the owners of the fee, and a franchise
as against the municipality. p. 187.

8.    RAILROADS.—*Use of Streets.—Exclusive Rights.*—The use of a
street by a railroad company for any length of time does not vest
in it the exclusive right to use such street. p. 188.

9.    MUNICIPAL CORPORATIONS.—*Grant of Exclusive Right in Streets.*
—Municipalities have no right to grant or release to others the
exclusive right to use the streets; and such grants or releases are
void. p. 189.

10.    SAME.—*Ordinances.—Exclusive Rights.—Evidence.*—A munic-
ipality's ordinance releasing its right in a street and reciting that
such company had for fifty years exercised exclusive control
thereof, and that such municipality had never used such street
nor claimed any rights therein, is of no legal effect, such recitals
constituting no evidence of the facts therein enumerated, and
such an attempted release of the municipality's rights being void.
p. 190.

11.    RAILROADS.—*Streets.—Building Platforms in.—Rights of Pedes-
trians.*—A railroad company which, under an ordinance purport-
ing to release to it the exclusive right to the use of a street,
builds a platform therein, has no right to prevent the use of such
platform by pedestrians. p. 190.

12.    RAILROADS.—*Mail Clerks Throwing off Mail Sacks.—Allega-
tions.—Evidence.*—Where a complaint alleges that it was the
custom for defendant railroad company's mail clerk to throw off
the mail sacks west of the company's station, and that it was the
custom of such company to permit such clerks to discharge such
sacks upon the sidewalk or platform at a time and place which
subjected persons upon such sidewalk or platform to great danger,
evidence showing that there was a custom of throwing off sacks
east of the depot, and that pedestrians used the part of the plat-
form east as much as that part west of the depot, and that the
injury occurred west of the depot, sustains the allegations of the
complaint. p. 191.

13.    SAME.—*Liability for Acts of Mail Clerks.*—Railroad companies
are liable for the dangerous practices of mail clerks, where such
companies suffer such clerks to indulge therein. p. 192.

14.    SAME.—*Custom of Mail Clerks.—Notice.*—The fact that for
two years it was the custom of the mail clerks on defendant rail-
road company's trains to discharge, from moving trains, mail
sacks upon the platform, sufficiently shows that the company had
notice thereof. p. 194.

15.    EVIDENCE.—*Improvement of Streets.—Railroads.—Discharging
Mail Sacks.—Pedestrians.*—In an action by a pedestrian for in-
juries inflicted by the mail clerk on defendant railroad company's
train in discharging a mail sack therefrom, the admission of

evidence that the city improved the street to the rear of the depot near which such pedestrian was walking, even if erroneous was not sufficiently harmful to justify a reversal of the case. p. 194.

16. TRIAL.—*Instructions.—Damages.—Loss of Time.*—An instruction that the jury could take into consideration the plaintiff's loss of time in estimating his damages, is not improper, where the complaint alleged that plaintiff was rendered unconscious for three days, and disabled from doing a full day's work on account of such injuries. p. 194.

17. PLEADING. — *Complaint. — Amendments.—Appeal.*—Where the plaintiff proved damages because of loss of time, the complaint making no charge of such damage, such complaint will be deemed amended on appeal so as to call for such relief. p. 195.

18. RAILROADS.—*Discharging Mail Sack Against Pedestrian.—Negligence.—Contributory.*—A pedestrian walking along a railroad station platform struck by the discharge of a mail sack from a moving train is not guilty of contributory negligence, where he was not aware that such sack would be discharged at such place. p. 195.

19. EVIDENCE.—*Presumed True, When Uncontradicted.—Railroads. —Discharging Mail Sacks.*—Where a drayman testified that it was the custom of the mail clerk on defendant railroad company's train to discharge the mail sacks at a certain place, and such testimony is not contradicted, it may be assumed as true. p. 196.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Action by John W. Warrum against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $3,500, defendant appeals. *Affirmed.*

*John L. Rupe, Hough & Hough* and *Watson, Titsworth & Green,* for appellant.

*William Ward Cook, Smith, Cambern & Smith* and *McBane & Glascock,* for appellee.

RABB, J.—Appellant's passenger depot in the city of Greenfield is located half way between Pennsylvania street on the east, and Mechanic street on the west. In front of the depot the appellant has built, for the accommodation of its business, a substantial brick platform, from twelve to sixteen feet wide, and extending from Pennsylvania street to Mechanic street, which, from its location and manner of

construction, is convenient for use by the public as a side-walk, and it is claimed by the appellee that this platform is laid along the side of and within the limits of a public street of said city, and that the public have a right to use and do use it as a sidewalk. (See plat.)   The appellee while passing along said platform, on his way to his work, and on no business relating in any manner to the affairs of the appellant, was struck and injured by a mail sack thrown by a United States postal clerk from a mail-car in one of appellant's passenger- and mail-trains while the same was running at a high rate of speed over appellant's road. This action was brought against appellant to recover damages for the injury, charging appellant with negligence.   The substantial averments of the complaint with reference to the charge of negligence are that for more than two years last past it had been the daily custom of the United States mail clerks on the mail-cars running over appellant's road to throw from the rapidly-moving trains running over said road, onto said alleged sidewalk, large sacks of mail at such time and in such manner as to be dangerous to those using said walk, and that this was done with the knowledge of appellant, and without objection from it, and that appellee had no knowledge that it was the custom of such mail clerks to throw out such mail from rapidly-moving cars at a point west of appellant's depot, but that such was the fact, and that the practice was known to and permitted by the appellant.   The cause was tried by a jury.   Verdict and judgment for appellee.

One of the errors assigned and relied upon for reversal is the action of the court below in overruling appellant's demurrer to the first paragraph of the complaint.

1.   The record affirmatively shows that no evidence was introduced in support of this paragraph of the complaint, and that the finding and judgment rest exclusively upon the second paragraph of the complaint.   This assigned error, if any, was therefore harmless.

The overruling of appellant's motion for a new trial is assigned as error, and under this assignment numerous questions are presented. One of the reasons assigned for a new trial is that the evidence fails to support the verdict.

It is urged, among other things, in support of this reason, that the evidence shows, without contradiction, that the place where appellee was injured belonged to the railroad company exclusively, and that the appellee had no legal right on the premises, his business there being in no manner connected with the business of the company, and that, therefore, the company owed him no duty except to refrain from committing a wilful injury. This raises the question as to whether the platform or sidewalk, upon which appellee was walking at the time of his alleged injury, was on a public street of the city of Greenfield.

If the place where the appellee was injured was a public highway, then he had a right to be there, and the appellant was bound to exercise reasonable care in the conduct of its business to avoid injury to him. *Louisville, etc., R. Co.* v. *Phillips* (1887), 112 Ind. 59, 2 Am. St. 155, and cases cited.

In the use of public streets, railroad companies and street-railroad companies have the right of way in preference to travelers on the highway, for the reason that the cars used on such railroads are more cumbersome and difficult to stop and control than are vehicles used by travelers on the public highway, but in all other respects their rights to the use of the highway are equal. *Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind. 380, and cases cited. The evidence shows, without conflict, that in the year 1853 one Pierson laid out and platted an addition to the then town of Greenfield; that he duly acknowledged said plat, and caused it to be recorded in the recorder's office of Hancock county; that among several streets properly shown on said plat was one designated as Railroad

street, extending several blocks, the entire length of said addition; that lots were laid out on both sides of the street for its full length, those abutting the street between Mechanic street and what is now known as Pennsylvania street being much smaller than those along the squares east of Pennsylvania street; that this street was opened and built upon for its whole length, the lots lying east of Pennsylvania street being generally occupied by residence property, while the lots between Pennsylvania and Mechanic streets were sold to persons who built mills, elevators, warehouses and blacksmith-shops upon them, and that some of these buildings were used for other purposes; that about the time this addition to the town was laid out and the street opened the appellant's railroad was built upon it, and side-tracks were laid in the street to these various mills, elevators and warehouses, and these tracks have ever since so remained; that the defendant company's first depot, for both passengers and freight, was built on the north side of this street on ground now occupied by Pennsylvania street. The evidence shows, without dispute, that this street has been continuously used by the public for travel since it was opened, and is still so used. It does not show, however, that the portion of the street opposite the mills, warehouses and elevators, and occupied by appellant's main and side-tracks, was ever used by teams or vehicles, but it does show without dispute its constant use by pedestrians. The evidence fails to disclose whether the railroad company was ever expressly granted the right of way over this street, either by the owner of the land or the authorities of the town or city, until March 6, 1901, but it does show its continuous use by the company since its first occupation in 1853 or 1854. The evidence does not show that either the authorities of the town of Greenfield, if it ever was an incorporated town—on which question the evidence is silent —or the city authorities, expressly accepted Railroad street as a public street of said town or city, or that they ever

improved the same or caused the same to be worked at any point between Pennsylvania and Mechanic streets.

It is earnestly contended by appellant that the evidence affirmatively shows that the street in question was not dedicated to the public, but to the railroad company

4. for railroad purposes. This contention cannot be sustained. There is no such thing at common law or by virtue of any provision of our statutes as the dedication of property to a private person or corporation. Dedications must be made to the public. *Lake Erie, etc., R. Co.* v. *Whitham* (1895), 155 Ill. 514, 40 N. E. 1014; *McWilliams* v. *Morgan* (1871), 61 Ill. 89; Washburn, Easements (4th ed.), p. 205; *Watson* v. *Chicago, etc., R. Co.* (1891), 46 Minn. 321, 48 N. W. 1129.

Railroad companies do not and cannot acquire their rights of way in this manner, and there is nothing on the plat introduced in evidence in this case indicating a

5. reservation of any kind in favor of the railroad in the dedication of the ground in question. The premises were laid out as a street. It is so marked on the plat, so designated by the proprietor of the addition in the statement accompanying the plat and recorded with it. Lots were sold by the owner with reference to the plat, and so far as he was concerned there was a complete and irrevocable dedication of the ground to the public and the lot owners as a public street. The railroad company acquired no rights whatever under the dedication. The mere naming of the street Railroad street gave it no rights, and all the legal rights it had in the premises, so far as the evidence discloses, prior to March 6, 1901, it acquired by prescription. It is insisted that the evidence fails to show an acceptance of the street. An acceptance by the public of the

6. street dedicated to its use is necessary to be shown to perfect the dedication. Such acceptance may be proved in several ways, and there are some modes of proving an acceptance of a dedicated public street that do

not appear in the evidence in this case. It does not appear that the public authorities at any time formally accepted this street, or that they impliedly accepted it by making improvements or doing work on this particular part of the street; but it is in evidence, without controversy or contradiction, that this part of the street has been constantly used by foot travelers practically ever since it was laid out.

Appellant insists, however, that the evidence shows that this use is only such use as is habitually made by the public of the railroad company's private right of way, wherever the same remains open and is convenient for public travel. This insistence is probably true, and if it were shown that the appellant was the legal owner of these grounds, as its right of way, the evidence would not be sufficient to establish a right in the public to use the way. But such is not the question here. Here the appellant has never been granted the exclusive right of way over these premises by any person authorized to give it such right. On the contrary, the premises were dedicated by the owner to the public. In the case of a use for travel by the public of a railroad company's private right of way, the legal right to the way is in the company. The public have only a permissive use. In this case the public have the right to the way, and the railroad company is but a permissive user. The question is, whether the user by the public is an acceptance of the dedication. That such acceptance can be as effectually shown by such a continuous user, as in any other manner, is well settled in the cases of *Summers* v. *State* (1875), 51 Ind. 201; *Strunk* v. *Pritchett* (1901), 27 Ind. App. 582. And see Elliott, Roads and Sts. (2d ed.), §154, and cases cited.

Appellant urges that its occupancy of the land for more than fifty years gives it the exclusive right so to continue.

7. The evidence discloses that the company's use of the land has not been exclusive in the past, but has been concurrent with its use by the public as a highway,

the only difference being that the railroad company has made more and different uses of it than the public. The company's user of the premises for the purpose of its road for all these years has fully established its right, by pre-. scription, so to use it, but only in common with the public. It takes the place of a grant from the owner of the land and a franchise from the municipal corporation. But it does not give the company, which entered upon the street without legal right, the right to elbow off those who have had the legal right to use it ever since its dedication by the owner. The rights of the public to the street once attached, the appellant could not acquire the exclusive right to the use of the street by any length of user. *Manion* v. *Lake Erie, etc., R. Co.* (1907), 40 Ind. App. 569; *Wolfe* v. *Town of Sullivan* (1893), 133 Ind. 331; *Louisville, etc., R. Co.* v. *Downey* (1897), 18 Ind. App. 140.

Appellant introduced in evidence a copy of the proceedings of the common council of the city of Greenfield at a meeting held March 6, 1901, as follows:

"Be it resolved, by the common council of the city of Greenfield, that whereas Railroad street in said city, socalled, between Pennsylvania street and Mechanic street, has been platted as a street, but that the same has never in fact been accepted, used or improved as a street by the city or town of Greenfield, or by the public authorities, and said city has never claimed or exercised jurisdiction over it as such, and the same has always been as it now exists between said Pennsylvania and Mechanic streets, used, occupied and held exclusively for railroad purposes, and that the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, now the owner of and operating the railroad passing through said city and over and upon the ground before described, and that said railway company is proposing to construct a new passenger station upon its grounds, lots numbered six, seven, eight and nine of Pierson's addition to said city, and in the construction thereof it will be necessary that said company occupy with its buildings, platforms and tracks a part of the ground south of its said grounds, consisting of lots numbered one to ten, inclusive, in said

Pittsburgh, etc., R. Co. *v.* Warrum—42 Ind. App. 179.

Pierson's addition, said new station and depot and facilities being found to be needed for the accommodation of the public, and of great benefit and improvement to said city, and said railway company, desiring to be fully protected in its use of said ground, so to be used and occupied for its said new station and facilities connected therewith; now, therefore, for the purpose of disclaiming any and all right in said city in said ground, and any and all jurisdiction over the same as a street, and fully to protect said railway company, its successors and assigns in the full use thereof, it is now and be it resolved that said city does fully disclaim all rights in and jurisdiction over the said ground as a street, and does declare the truth of the foregoing facts recited, and that it will not in future make any claim thereto as against said railway company, its successors or assigns, and that full and complete authority is now and hereby granted to said railway company, its successors and assigns, to use and occupy said ground between said Pennsylvania and Mechanic streets for its depot and platforms and station facilities, fully and freely in all respects. And that this authority shall be irrevocable and shall at all times fully protect said company, its successors and assigns, in such an occupancy against any and all claims by said city at any time of right in or jurisdiction over said ground as a street or public highway.''

It is claimed by appellant that this resolution vested the company with the complete and exclusive right to the street, or at least that part of it on which its platform was 9. built, and where the accident to appellee occurred.

We do not see our way clear to adopt this view. It is true that the city council is vested by the legislature with very large powers with reference to city streets, but it has no power to grant to a railroad company the exclusive right to use a public street. *Louisville, etc., R. Co.* v. *Downey, supra; Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489; *Sherlock* v. *Kansas City Belt R. Co.* (1897), 142 Mo. 172, 43 S. W. 629, 64 Am. St. 551; *Lockwood* v. *Wabash R. Co.* (1894), 122 Mo. 86, 26 S. W. 698, 24 L. R. A. 516, 43 Am. St. 547; *Manion* v. *Lake Erie, etc., R. Co., supra.*

Nor are the recitals in this resolution in reference to what has been done by the railroad company in the occupancy and use of the street, and what has not been done by the city or town authorities, of any legal effect. Whether the premises in question had been accepted as a public street is a matter of law dependent upon facts that cannot be proved by a resolution of the common council of the city of Greenfield, and what had or had not been done by the town or city authorities with reference to work and improvements upon the street, or by the company in reference to their occupancy of the street, would have to be made manifest by the records of the city council with reference to those matters and the testimony of sworn witnesses who knew the facts and circumstances regarding the matter. And if the rights of the public in the premises as a public street had once attached, they could not be destroyed by this renunciation of the common council. If they had not attached, the resolution of the council would be entirely unnecessary and meaningless. The full extent of appellant's rights, acquired under this resolution, was to the street for all necessary purposes, including the construction of its depot platform; but the company could be given no exclusive right to the portion of the street occupied by this platform. The act of the railroad company in laying the brick platform in the public street, though with the full consent of the city authorities, was no more effective to exclude the public from passing over it than laying its track, by consent of the same authorities, in a recognized public street would exclude the traveling public from walking, riding or driving over their rails, ties and roadbed. The reciprocal rights of the company and of the public would be precisely the same in one case as in the other.

The evidence in the case being sufficient to justify a finding that Railroad street, between Mechanic and Pennsyl-

vania streets, was a public street in the city, and that the place where the appellee was struck was in the limits of the street, the appellee, therefore, was neither a trespasser nor a mere licensee, but was where he had a lawful right to be, and the railroad company was bound, in the exercise of its rights, to observe reasonable care not to injure him. It was bound to observe the same care toward him as it was required to exercise toward those who used the platform for some purpose connected with appellant's business.

The point is made that the evidence fails to establish the facts averred in the complaint constituting the charge of negligence against appellant. The complaint avers, among other things, that it was the custom of the postal clerks to throw off the mail sacks from fast trains at a point west of appellant's depot, where they were likely to injure persons lawfully upon the platform. The evidence fails to sustain this averment. There is no proof that mail sacks were ever thrown off the appellant's trains by postal clerks at a point west of appellant's depot prior to the time of the appellee's injury. If this was all the complaint contained upon the subject of appellant's negligence, the point urged by it in this respect would be well taken, but the complaint further alleges that "for more than two years last past it has been, and still is, the daily custom of the defendant at said station knowingly to permit large bags of mail to be discharged from said trains by mail clerks and agents, while said trains are in rapid motion, upon said sidewalk, at such time and place, and in such manner, as subjected the persons who might be upon the sidewalk at such time to great hazard of life and limb." There are other allegations in the complaint describing the sidewalk or platform, and averring its use by the public and the patrons of the road for the purposes of travel. These averments, though by no means artistically drawn, are sufficient

to admit proof of the throwing off of mail sacks by postal clerks at other points along the platform in question than west of the depot, or the particular spot where appellee was struck. The testimony of Tuttle, a drayman, was to the effect that the mail carrier generally received the mail between the depot and Pennsylvania street; that the mail clerks kicked it off the cars, and that it fell on the platform between Pennsylvania street and the depot, and it was fairly inferable from the evidence that the platform was as much frequented by pedestrians east of the depot as it was west of the depot.

Our attention is particularly directed to the case of *Muster* v. *Chicago, etc., R. Co.* (1884), 61 Wis. 325, 21 N. W. 223, 50 Am. Rep. 141. In that case the plaintiff was engaged at work on a scaffold at the defendant's depot. A mail clerk threw a mail sack from a passing mail-train, which struck and knocked down the scaffold, injuring the plaintiff. It was averred in the complaint that the postal clerks were in the habit of throwing off the mail at the depot, and that the practice was dangerous and was known to the defendant, and permitted without objection from it. The evidence showed that the mail had never been thrown off at the depot before, but at the mail catch 200 feet away, and there is nothing in the case tending to show that any danger was to be apprehended at the place where the mail was customarily discharged. The railroad companies are not primarily liable for the negligence of the servants of the Government in discharging their duties. They are in no sense servants or employes of the company, and the only ground upon which the railroad company is held liable for their acts, is that the mail clerks travel on the company's cars, and by reason of that fact have it in their power, by dangerous practices, to injure those who may lawfully be in close proximity to the company's road, and to whom the company owes a duty of exercising reasonable care to protect from injury by reason

of the passage of its trains, and that the company has without objection, suffered such mail clerks to indulge in such dangerous practices. Here, the dangerous practice charged was throwing off mail sacks at this station, at a place where they were liable to injure some person or persons who had a right to be there. It is essential that the evidence should show that it was the custom to throw the mail sacks where they were liable to do injury to some person, but it was not essential that the evidence show that they were thrown off customarily at the exact spot where the appellee was standing when struck. The evidence in this case would justify the jury in concluding that it was just as dangerous to throw the mail sacks off on the platform east of the depot as it was west of the depot. The traveling public and those having business with the company, the evidence in the case indicates, used the entire platform, from one end to the other, the east end quite as much as the west end; and it was simply a matter of chance that the accident took place west of the depot rather than east of it, and that a similar accident was liable to happen anywhere along the platform. The negligence of the company was in permitting the dangerous practice, and the evidence, we think, is amply sufficient to sustain this charge.

The distinction between this case and the case of *Muster* v. *Chicago, etc., R. Co., supra,* is that in this case the evidence affirmatively shows that at the point where the mail sacks were customarily discharged there was danger of injuring persons by throwing them from the moving trains, while in the case cited the evidence does not disclose that the place where the mail sacks were discharged was one where danger of injury to any person could reasonably have been apprehended.

Among other reasons given for a new trial was the introduction in evidence of a speed ordinance of the city of Greenfield. Admitting that this evidence was incompetent,

a question we do not decide, there is no dispute that the postal clerks customarily threw the mail sacks on the platform between Mechanic and Pennsylvania streets, and that this place where the mails were thus thrown was in constant use by the traveling public and by the patrons of the road. These facts were not denied, and we think that they affirmatively establish negligence on the part of the railroad company, in the absence of any countervailing evidence. The company was bound to know of this custom from the length of time that it had prevailed, and if it would excuse itself upon the ground that the custom prevailed over its objection and remonstrance, it was for it to prove that it had made such remonstrance, or that it had used reasonable effort to prevent the practice. Nothing of the kind appears in evidence, and we therefore think that the evidence not only justified, but required a finding that the appellant was guilty of negligence in permitting this practice to prevail. It is only to the question of negligence that the speed ordinance and the testimony in reference to the speed of the train was addressed, and therefore if there was error in admitting this evidence, it was harmless.

Objection is made to the introduction in evidence of the improvement of Depot street. This may have been an error, but we do not see how it could have been so harmful as to justify this court in reversing this case.

Exception is taken to the sixteenth charge given by the court to the jury on its own motion. The objection to this charge is that it authorizes the jury to take into consideration all loss of time to the appellee caused by his injury, and that no special damages on that account were averred in the complaint. It is averred in the complaint that plaintiff was rendered unconscious for three days, and disabled from doing a full day's work on account of his injuries. We think these allegations are sufficient to justify the instruction, and if they were not, and there was

evidence of a loss of time on account of appellee's injuries, the court below should have permitted the complaint to be amended to correspond to the evidence in this respect, and the amendment will be considered as having been made. Objection to some other charges given by the court to the jury are made, none of which we think is sufficient, if erroneous, to justify a reversal of this case.

It is urged by appellant that the evidence affirmatively shows the appellee to have been guilty of contributory negligence in failing to take notice of the approach of the train when he knew it was coming, and could easily have seen it, and that had he given the approaching train attention he could have avoided the accident that happened to him.

The evidence shows that the appellee was walking along a wide platform, and that he was several feet away from the edge of the platform next to the appellant's road in a place where he would be amply safe and secure from the passage of the train. He knew the train was coming, but he had no reason to apprehend that the train would either leave the track and injure him, or that somebody on board the train would throw a missile from it and strike him. There is no ground for holding the appellee guilty of contributory negligence. The evidence in this case shows, without contradiction, that the appellee, while passing along the company's platform, at a safe distance from the company's track, was struck and severely injured by a mail sack thrown by a postal clerk from a mail-car passing at a high rate of speed over the appellant's road; that it had been for more than two years the custom of the mail clerks on this road to throw off the mail sacks upon this platform, along which the public passed daily and hourly; that the place where the platform was built was a part of a public street that had been dedicated to the public use as a street many years before, and that it had been constantly and continuously used

from the time of its dedication to the time of the appellee's injury by the public who had occasion to use it as a place of travel.

These facts appearing without controversy, require the court to affirm this judgment, although there may be intervening errors of the court in the admission of evidence or instructions given to the jury.

Judgment affirmed.

## ON PETITION FOR REHEARING.

RABB, J.—It is insisted by appellant in its petition for a rehearing that the court in deciding this case has misapprehended the evidence upon the subject of the custom of the mail clerks on appellant's mail-cars discharging mail sacks from its fast mail-trains onto the walk and platform in front of appellant's depot in the city of Greenfield; that the statement in the opinion that the existence of this custom was shown by the uncontradicted evidence in the case is incorrect; and that there is, as we understand their contention, a substantial conflict in the evidence upon this subject. The testimony of the witness Tuttle, to the effect that the mail clerks generally kicked the mail sacks off the car, and that they fell most of the time about Pennsylvania street, on the platform between the depot and the street, was not disputed by any other witness who testified on behalf of either appellant or appellee. The testimony of other witnesses that the mail sacks were generally thrown off in the vicinity of Pennsylvania street in nowise conflicts with the statement of this witness. He was a drayman whose business called him frequently to the depot, and his means and opportunity of knowing the facts with reference to the custom of the mail clerks in throwing the mail sacks from the train were better than those of any other witness who testified in the case upon the subject. No attempt was made by the appellant to contradict his testimony, but, on the contrary, the complaint and answer, upon

which the cause was submitted to the jury for trial, both affirm the existence of such custom. The record, it is true, discloses that after the jurors were sworn and the cause submitted for trial, and after all the evidence was in, without any showing that an application was made by the defendant, or leave granted to file additional pleadings, the appellant did file a general denial to the complaint. Without deciding what the effect of a pleading so filed would be, it is sufficient to say that it is apparent from the record that the case was tried upon the theory that such custom on the part of the mail clerks existed, and that the appellee was bound to know of it, and that in going upon the platform or walk, as he did, he took upon himself the risk of such danger.

It was the appellant's theory that the place where the accident occurred was the private property of the appellant, and the appellee was there as a mere licensee, to whom the appellant owed no duty that required it to guard him against the peril he encountered.

5.

For the reasons stated in the original opinion, we think it was shown that the place where the appellee was injured was a public street which the appellee had a common right with appellant to use, and where both appellant and appellee were in duty bound to exercise due care to avoid doing injury and being injured. This being true, and the fact being undisputed that the appellee was struck and injured by a mail sack thrown from appellant's car by the mail clerk, and the circumstances of the injury, disclosed by the evidence, excluding contributory negligence on the part of appellee, no error of the court in its rulings on the admission or rejection of evidence, or instructions given to the jury, would justify a reversal.

Petition for rehearing overruled.