Lewis *v.* Pennsylvania Railroad Company.

[No. 13,311. Filed April 5, 1929. Rehearing denied December 6, 1929. Transfer denied July 29, 1932.]

*Beckett & Beckett* and *Featheringill & Drybread,* for appellant.

*Pickens, Davidson, Gause & Pickens, Henry E. White* and *Rynerson, Bryer & Shinn,* for appellee.

NICHOLS, J.—Action by appellant for damages because of injuries suffered by appellant resulting from the negligence of appellee. There were two paragraphs of complaint. It is averred in the first paragraph of complaint that on January 8, 1926, appellee operated a railway through the city of Knightstown, Indiana, in an east and west direction, and that it carried United States mail on its trains through said city. Appellee had constructed, on the south side of its road in said city, a receiving pen to catch the mail thrown from fast moving trains. Such pen was constructed by appellee on the south side of its road and near a public street, running north and south through said city. Appellant's train ran over said highway on an overhead bridge which was 18 to 20 feet high. Said pen was negligently constructed, with the east end thereof about 50 to 75 feet from the highway where it passed under said overhead bridge. It was the custom of the mail clerks on appellee's mail trains to throw mail sacks off of such trains into the receiving pens while the train was running at a rate of speed of from 60 to 70 miles per hour, which custom was within the knowledge and consent of, acquiesced in, and approved by appellee. The mail sacks weighed from 100 to 200 pounds and would strike the ground and then bound from 50 to 75 feet. Appellee well knew this fact. Appellee negligently constructed the east end of said receiving pen 20 to 30 inches in height and the mail sacks, when they struck the ground inside the said pen, would bounce over the fence from said pen, and into the

public highway, falling on the south side of the overhead bridge, and thereby endanger the lives and limbs of travelers on said highway. Appellee had knowledge of this condition and permitted the mail clerks to throw the mail sacks from the train while the train was moving at a high rate of speed, well knowing that the mail sacks were likely to bound over the east end of the receiving pen, or the momentum of the mail sacks would carry them beyond the receiving pen, and into the public highway. On January 8, 1926, appellant was driving a gentle horse hitched to a wagon, under the bridge and on the highway, and he was at the time sitting in the wagon on a high seat, and while so doing and just as he emerged from the south side of the overhead bridge, a mail clerk on one of appellee's trains threw a mail sack off of the train into or east of the receiving pen near the east end thereof, and the mail sack struck the ground and bounded into the highway, and fell upon appellant, and knocked him out of the wagon onto the ground and injured him. Appellee was guilty of negligence aforesaid in that it constructed the east end of the receiving pen too near the highway, and that it negligently constructed the east end of such pen too low, and that it negligently ran its trains 60 to 70 miles per hour past said receiving pen, and that it negligently permitted the mail clerks upon said train to throw the mail sack off thereof while the train was running from 60 to 70 miles per hour, and by reason of such negligence, the mail sack bounded into the highway and injured appellant.

The second paragraph of complaint avers the same general facts as the first paragraph, and then charges that by reason of appellee's negligence in permitting and acquiescing in the dangerous conduct and acts of the mail clerks on its train, in so ejecting said mail pouch, and by reason of appellee's negligence in failing to stop and prohibit such custom and practice of said mail

clerks, appellant was injured as a proximate result of each and every act of appellee's said negligence. There is a demand for damages in the sum of $25,000. Answer in denial. The cause was submitted to a jury for trial which resulted in a verdict for appellee on which the court rendered judgment. From this judgment, after appellant's motion for a new trial was overruled, this appeal was taken, appellant assigning as error the action of the court in overruling his motion for a new trial under which he presents error of the court in giving each of certain instructions, and in refusing to give each of certain other instructions tendered by appellant.

As appears above there were four acts of negligence charged in the first paragraph of complaint, but by Instruction 16, given by the court on its own motion, it eliminated two of these acts therefrom. Further, this instruction told the jury that appellant must prove all the acts of negligence charged in this paragraph before he could recover. This was a wrong statement of the law. Appellant would be entitled to recover if he proved any one of the alleged negligent acts averred, if such negligent act proximately caused the injuries complained of. *Lathrop* v. *Frank Bird Co.* (1924), 81 Ind. App. 549, 552, 142 N. E. 868; *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, 149, 73 N. E. 91.

This principle was involved in Instructions 5 and 12, given by the court on its own motion, and in Instruction 4 tendered by appellant, and refused, and so far as the court's action in giving or refusing these instructions, or otherwise, was contrary to such principle, it was error, but as hereinafter appears, it was harmless.

Appellant complains of Instruction 18, tendered by appellee and given by the court. This instruction informed the jury that the mail clerk who threw the mail sack in question, was not an employee of the railroad

company, and was not under the supervision of said company, and therefore, even though he was negligent in throwing the mail sack which struck appellant, appellee would not be liable therefor unless the negligent act of said mail clerk in so throwing said mail sack into Franklin Street had been repeated so many times and at such regular intervals, and with such continuing regularity as to constitute a habit, custom or practice, and unless such habit, custom or practice was known to appellee, permitted by it, acquiesced in, and appellee consented to the continuance of such habit, custom or practice. As it seems to the court, the principle involved in this instruction is in substantial agreement with that announced in *Pittsburgh, etc., R. Co.* v. *Warrum* (1908), 42 Ind. App. 179, 82 N. E. 934, 84 N. E. 356. While there is no averment in either paragraph of the complaint that the mail sack was thrown into Franklin Street, but that it was thrown into the receiving pen or east of it, and then bounded into Franklin Street, there was evidence that the mail sack was, at divers times, thrown into Franklin Street, and the undisputed evidence, given by appellant's witness, is that the mail sack that injured appellant was thrown from the car door directly into Franklin Street, and unless such act had been repeated so often as to become a custom or habit, and known to and acquiesced in by appellee, as charged in the instruction, there could be no recovery because of such negligence of the mail clerk. There was no error in giving instruction number 18.

If the mail sack that injured appellant was thrown directly into Franklin Street, then the fact that the receiving pen was not built high enough, or that it was too close to the highway, or that the train was running so fast under the circumstances as to have caused the mail sack, had it been thrown into the pen, or to the east of it, to bound into Franklin Street,

could not have been the proximate cause of the injury. With these three respective acts of negligence eliminated by the undisputed evidence, it necessarily follows that the court's action with reference to instructions 16, 5, 12 and 4 considered above, though erroneous, was harmless. We find no reversible error.

Judgment affirmed.

### On Rehearing.

NICHOLS, J.—We think we have sufficiently stated, in the original opinion, the theory of each of the two paragraphs of complaint, but, that we may have clearly before us the thing that happened at the time of the accident complained of, as averred in each of these paragraphs, we set out these averments as follows: It is averred in the first paragraph of complaint that "The United States mail agent upon defendant's train threw the mail pouch off of said train into or east of said receiving pen near the east end thereof, and the said mail sack *struck the ground and bounded into said highway* and fell upon the plaintiff." (Our italics.)

It is averred in the second paragraph of complaint that "said mail clerk or agent of the United States government aforesaid, on the 8th day of January, 1926, as said train ran through said town and passed said mail pen, ejected said mail sack or pouch from said train as was his custom and practice as aforesaid, while said train was running at said high rate of speed, to-wit: 60 to 70 miles per hour, and at its usual rate for many years while passing through said point, and the same *either lit in the east end of said pen or east of said pen,* and by reason of the momentum acquired by the speed of said train *bounced or bounded into said highway* as the plaintiff was driving his wagon and horses upon said highway from the north to the south, and struck plaintiff and injured him to his great damage." (Our italics.)

It is to be kept in mind that by the averments of the first paragraph of complaint, appellee's negligence consisted of the improper construction of the pen, the improper location of the same and in permitting the mail clerks to pursue a custom of attempting to throw their sacks from the train into the pen under such conditions; and that by the averments of the second paragraph of complaint, the negligence of appellee consisted, under the same conditions, in negligently running its train at an excessive rate of speed, and in permitting, and acquiescing in, the dangerous custom of the mail clerks in attempting to throw their mail sacks into the pen. It follows then that if, on the occasion complained of, it did not appear by the evidence that the mail sacks were thrown into the pen or on the ground near the east end of it and that they bounded or bounced therefrom into Franklin Street, the negligence with which appellee is charged in the complaint and each paragraph thereof did not result in the accident which produced appellant's injury.

We make the following statement of the evidence directly from the record: Arthur Smith, a witness called on behalf of appellant, stating his evidence in narrative form, testified so far as here involved, that he is a painter, forty years old, and lived at the time appellant was hurt, January 8, 1926, on Grant Street right close to Franklin Street, east of Franklin on the north side of Grant. At the time of the accident, he was in the back yard pumping a bucket of water and was about 60 feet from where the overhead crossing crosses Franklin Street, north west of where he was. There were no buildings between his house and the overhead crossing at Franklin Street and no trees. It was snowing just a little, but not very bad, flurries; he could see the overhead, and saw No. 20 pass. It was running 60 or 70 miles an hour, he couldn't tell exactly. It was about

3:50 o'clock. The train was running at about the usual speed. Appellant was traveling south in the center of the street, as nearly as the witness could tell, and he saw a mail sack hit appellant's umbrella; it came from the door on the south side of the train. It was west of the arch when it came out of the door. It was thrown out or kicked, he couldn't tell which. It was west of Franklin Street when it was kicked out. On cross-examination the witness testified that on the day of the accident it was snowing a little but that there was very little on the ground; that he saw just one mail sack come down into the street; that it was the one that hit the umbrella and came through the top of it, and that he certainly saw it come out of the car door. The witness further testified that he never saw the mail sacks hit in the pen and bounce out, but that he had seen quite a few of them stick in there, and they did not come out. In the six years that he lived there it missed the pen 15 or 20 times, and when he said 15 or 20 times, he was not talking about the center of the street. Part of them were east of Franklin Street along the track.

Witness Crandall, called by appellant, testified that he was the mail and express man and had handled both the mail and express at Knightstown for thirty years. Franklin Street, from curb to curb, was about 30 feet wide and from property line to property line, about fifty feet, maybe a little more. The mail is delivered into the pen west of Franklin Street. The pen is about 10 or 12 feet wide and about 200 feet long. It was about 90 feet, maybe a little better, from the west property line, and 105 feet from the pen to the center of Franklin Street. He had seen sacks bound 20 or 30 feet at times. At the time of the accident he went after the mail and it was not in the pen. He found it down on the curb. It was snowing and blustering a little, he did not know that you could call it a heavy snow fall though

he had made a statement to that effect before. Right at the time the train went through, there was a blustery bunch of snow, one minute you could not see any distance and then you could. He went up to see where the mail was. There were no marks of any pouches or sacks. He did not find any. He did not find any east of the pen. He looked around. He looked in the pen first to see any marks of the sacks and then looked on the embankment east of the pen, up as far as Franklin Street and found no marks at either place. When No. 20 went through it was throwing a swirl of snow on each side of the train.

Witness Rue, one of the mail clerks called by appellee, testified in chief that at that time there was a real heavy snow, but he did not remember at what time it started in. The snow was falling fast. It was pretty cold and the wind was from the north, and when the wind is from the north the steam just whips the snow back and looks like a cloud of smoke. There were landmarks or buildings, or signs by which to go to assist in discharging the mail—first an overhead bridge, and the witness started to the door when they crossed that bridge; and then a grain elevator which he used for a mark for the receiver or mail pen. On this occasion he could not see these landmarks because of the steam and falling snow. He could not see the east end of the mail pen. The steam would rise and one would see through it and then it would drop again. When a train is traveling 60 or 70 miles an hour, the sacks will bound five or ten feet at the most. He thought he could see where he was throwing the mail sacks but it was not clear. It looked to him like it was in the right place. He could not see the east end of the mail pen, but did see the iron fence on the south side, just a moment and threw the sack right away. You have to work pretty quick. He did not throw any mail off of the train on that run after leaving

Knightstown because could see nothing for the snow and steam.

Witness Adair, the other mail clerk called as a witness by appellee, testified that the weather on the day that the accident occurred was stormy and that it was snowing and blowing and weather conditions were very bad. The steam from the engine was blowing hard, driving the snow right and left on the sides of the train. He thought the wind was from the north. He threw off the mail pouch, and then made a catch of a pouch hanging on a crane which was east of Franklin Street about 100 feet. He threw the sack off and thought it went into the receiver. He did not see it strike and did not know for sure, but he saw the fence along the side and thought the sack went in the pen. When a train is running 60 or 70 miles an hour, a mail sack will bound or bounce 15 or 20 feet very often. He never knew that he discharged mail into the pen at Knightstown in such a manner as that it missed the pen or went outside of it.

It is to be observed that neither of the mail clerks testified positively that the mail sacks went into the pen, only testifying that they thought that they did so, but they only saw the iron fence on the south side and did not see the east end of the pen. They were unable to see because of the steam which was blown to the south side of the train by a north wind, and the snow. No witness testified that the mail sack bounded out of the pen or from any place near the east end of it into Franklin Street. On the contrary, by the positive evidence of two witnesses, the mail sack went directly into Franklin Street, the one testifying that there were no marks in the snow either in the pen or east of it made by the mail sack, and the other that he saw the mail sack come from the door on the south side of the train and come down into Franklin Street. It is true that he testified that it was west of Franklin Street when it was

kicked or thrown out, but it is apparent that it had to be west in order that the momentum which it had from the speed of the train would carry it into Franklin Street and not beyond.

Not only was there this uncontradicted evidence that the mail sack was not thrown into the pen, or near the east end thereof, and from there bounding into Franklin Street, but when we take into consideration actual measurements, locations and conditions along with other uncontradicted evidence we are constrained to say that the mail sack could not have bounded from the pen or near the east end thereof and have struck appellant's umbrella and injured him as contended by him. Witness Smith testified that appellant was driving down the center of Franklin Street. By actual measurement this was 105 feet from the east end of the receiving pen, and 23¾ feet from the west property line of Franklin Street, which was one of the abutments upon which the overhead bridge rested. Appellant was upon a high seat upon his dray and his umbrella was yet above him. We reasonably assume that the umbrella must have been at least 8 feet above the street, and from other measurements the abutment could not have been over fifteen feet high. One witness testified that the sacks would, when the train was running 60 to 70 miles per hour, bound five to ten feet at the most, another 15 to 20 feet sometimes, and another, 20 to 30 feet at times. But on this occasion, in order for the mail sack to bound from the pen, or near the east end of it, and injure appellant, it must bound 105 feet from the east end of the pen to the center of Franklin Street, the last 23¾ feet of which were over the open street and to the top of appellant's umbrella. Under such conditions as appears by the uncontradicted evidence, we are not weighing the evidence when we say that such a happening was a physical impossibility, and that in order to strike

the top of appellant's umbrella and crush it downward, and injure appellant, it had to come directly from the car door. Such being the case, the negligence with which appellee is charged could not have caused appellant's injury.

It is a well established rule of law that a complaint must proceed upon some definite theory, and that the evidence must support that theory or there can ■ be no recovery. *Wagner* v. *Winter* (1890), 122 Ind. 57, 22 N. E. 754; *Cool* v. *McDill* (1906), 38 Ind. App. 621, 78 N. E. 679.

Petition for rehearing denied.

REMY, C. J.—Dissenting. This court has no right to weigh the evidence, in order to procure a basis for holding erroneous instructions to be harmless. The two mail clerks who threw the mail bags from the car knew better than anyone else where the car was when the bags were thrown. Each of them testified that he saw the fence which formed the south side of the pen, and that instant the bags were thrown. One of them testified that "the speed of the car carried it past." Each of them also testified that when conditions were such that they could not see to make a safe delivery of the bags, the bags were carried to the next station, and later returned. To be sure, witness Smith testified that he saw the particular bag leave the car door, and saw it come down and strike appellant in Franklin Street; but how can this court know who was mistaken? Was it the two mail clerks, witnesses for appellee, who said they threw the bags when the car was at the pen, or was it Smith? For aught this court may know, the story of Smith may have been a pure fabrication. It is to be observed that Smith did not testify that the bag which struck appellant was thrown "directly" into Franklin Street. He testified that it was thrown out of the car door when "west of Franklin Street," and, in effect, testified that it was

carried by the speed of the train into the street. The testimony of Crandall, who came for the mail after the train had passed, is of little weight. A part of his cross-examination is as follows: "Q. There was a heavy covering of snow on the ground, wasn't there? A. I don't think there was much snow on the ground. Q. The ground was covered with snow, wasn't it? A. I won't say. I don't remember. . . . Q. You say you went along and examined the ground in the pen? A. I just looked. Q. Don't that refresh your recollection that there was snow on the ground? A. No. There might have been some. Q. There was some? A. There might have been a little. . . . Q. There was enough snow on the ground that you could see tracks made by people? A. I suppose you could. I don't think there was much. May be there was. Q. Isn't that why you were up there, to see about the tracks? A. No. I went up to see where the mail was." Now, to use this evidence as establishing a "physical fact" to discredit the testimony of the mail clerks, and to show the impossibility of the bags being thrown out at the pen, is giving it greater weight than it deserves, even if we were weighing the evidence which we have no right to do.

It is also my judgment, that in the majority opinion too much stress is laid upon the question as to whether the bag struck the pen or the ground before it went into Franklin Street. Clearly, the theory of each paragraph of complaint is that the delivery of the bag at that place, under the conditions stated in the complaint, was dangerous to a traveler on the highway, and not the mere matter of whether it struck the pen or ground and bounced, or was carried into the highway by the momentum of the train. Proof that the bag which struck appellant did not strike the pen or the ground would not in my opinion be a material variance. See, *Pittsburgh, etc., R. Co.* v. *Warrum* (1908), 42 Ind. App. 179, 193,

82 N. E. 934, 84 N. E. 356; *Sargent* v. *St. Louis, etc., R. Co.* (1893), 114 Mo. 348, 21 S. W. 823, 825.

McMahan, J.—Dissenting. In so far as this court holds the evidence is undisputed, or that but one inference can be drawn therefrom, I can not concur.