SARAH J. GALLOWAY *vs.* CHICAGO, M. & ST. P. RY. CO.

Argued Jan. 15, 1894.   Affirmed Jan. 30, 1894.

No. 8526.

**Personal injury from mail sack thrown from train.**

While a railway company has no right to interfere with a United States mail agent in the discharge of his official duties, yet it has the right, and it is its duty, to prevent him, while on its trains, from continuing any dangerous practice, of which it has notice, which is liable to cause injury to passengers and others lawfully on its premises; and, if the practice is one from which such injury might be reasonably anticipated, it is not necessary, in order to charge the company with this duty, that on some former occasion a like injury had occurred.

**Railway company liable for the injury.**

Evidence considered, and *held* sufficient to justify the jury in finding that the mail agents on defendant's trains had been so long and so frequently in the habit of throwing mail sacks from moving trains upon the station platform, used and occupied by passengers and others lawfully there, as to charge the defendant with notice of the fact; also, in finding that this practice was one from which such injuries as those sustained by plaintiff by being struck by a mail sack might have been reasonably anticipated; also, in finding that the part of the platform where the injury was sustained was one which was in the habit of being used by passengers and others by the license or implied invitation of the company.

**Damages $10,000 not excessive.**

*Held*, also, that the damages awarded are not so large as to warrant this court in setting aside the verdict as excessive.

Appeal by defendant, the Chicago, Milwaukee and St. Paul Railway Company, from an order of the District Court of Ramsey County, *John W. Willis,* J., made August 22, 1893, denying its motion for a new trial.

*Flandrau, Squires, & Cutcheon, W. H. Norris* and *F. W. Root,* for appellant.

*Davis, Kellogg & Severance,* for respondent.

MITCHELL, J.   This was an action for personal injuries occasioned to the plaintiff by being struck by a mail bag thrown by a United States mail agent from a mail car belonging to the defendant

on one of its passenger trains at the station on its road at Durand, Wis. At this station the railway track runs north and south, and the depot and platform adjoin it on the west. The platform is of the width of twelve feet on all sides of the depot, and, of the width of eight feet, extends along the track in two wings,—one to the south about seventy five feet, and one to the north about one hundred feet, to the south line of a street which crosses the railway at right angles. The principal part of the village lies north and west of the station. The passenger train run on this road consisted of an engine and tender, mail and express car, baggage car, and two passenger coaches, in the order named; the mail end of the combination car being next the tender; the entire length of the train being about equal to the entire length of the platform. Trains from the south usually stopped so that the nose of the engine would be ten or fifteen feet beyond the north end of the platform, out on the street crossing.

On the day in question the plaintiff came from the village to the station, accompanying a young girl, for the purpose of seeing her safely upon the north-bound passenger train. Approaching the station from the north, she stepped up on the north end of the platform just as the train was pulling in from the south, and walked hurriedly along towards the south end of the platform, where the passenger coaches would be when the train stopped; and, as she claims, when she had reached a point on the platform some twenty or twenty five feet from the depot, she was struck by a mail sack thrown from the mail car while the train was still in motion.

Inasmuch as the mail agent was not the servant of the defendant, it is not claimed that the railway company would be liable for his negligence, however gross, on this occasion only.

To render it liable, as negligent, for the negligence of the mail agent, this government employe must have practiced a dangerous method of discharging mail sacks on the platform at this station so habitually, or so frequently, as to charge the company, as part of its duty to its passengers and others occupying its depot platform by its invitation or license, with notice, actual or implied, of his negligence or recklessness. While the railway company had no power to interfere with the mail agent in the discharge of his official duties, yet it was its right, as well as duty, to prevent him, while on its cars and on its premises, from continuing any negligent practice,

of which it had notice, which was liable to cause injury to passengers and others lawfully there. The case comes fully within the rule which enjoins care, not only on the part of the company's servant, but also like care in preventing injury from the wrongful act of others whom it permits to come upon its premises.

The negligence charged against the defendant is that it had notice of a long-continued custom of the mail agents of throwing heavy mail bags from the cars, while still moving at a high rate of speed, onto the platform occupied by persons lawfully there, in such a reckless and negligent manner as to endanger their safety, and that, notwithstanding such notice, it took no steps to prevent this negligent practice, or to warn people of the danger.

The answer admitted that the platform is a public place for the purposes of railway travel to and from the station, and for the transaction of railway business with the defendant, but denied all the allegations of negligence in the complaint. On the trial the defense was that mail bags were never thrown from the car upon the platform while the train was in motion, and the plaintiff, instead of being struck by the mail bag, walked against it, and stumbled over it, while lying on the platform; and, so far as plaintiff's right to recover was concerned, the case was tried squarely and exclusively upon this issue.

We are satisfied that the evidence justified the jury in finding that plaintiff was struck by a mail bag thrown from the cars while still in motion, and that the practice of throwing mail bags upon the platform before the train had come to a stop had been so frequent and long continued as to charge the defendant with notice of it. It is not claimed that the company had ever made any attempt to stop this practice, and it is expressly admitted that no notice or warning had been given, either to the plaintiff or the public, that it was the habit of mail clerks to throw out the mail bags while the train was in motion. Leaving out of account extreme instances testified to, the fair import of the evidence produced in behalf of the plaintiff is that it had for a long time been the practice of the mail clerks to throw out the mail sacks while the train had still sufficient speed to run from ten to thirty feet after they had thrown the sacks. Hence, in view of the evidence as to where the head of the engine usually stood when brought to a full stop, and as to the length of the engine

and tender, the jury was warranted in concluding that the act of the mail clerk on this particular occasion was not an exceptional one, but that the sack or bag was thrown out upon a part of the platform where he had been in the habit of throwing it.

It follows that, if this platform was used by passengers and others rightfully there by defendant's invitation or license, and that this practice of throwing out mail sacks from a moving train might reasonably be apprehended to result in injury to such persons, then the defendant was guilty of negligence which was the proximate cause of plaintiff's injuries. It was not necessary to charge defendant with negligence to show that on some former occasion a like injury had happened.

The practice of throwing loaded mail bags out of a moving train upon a platform occupied by the public is itself a dangerous act, and the accident which did happen on this occasion was just such a one as might be reasonably anticipated; at least, the jury had a right to so find. *Carpenter* v. *Boston & A. R. Co.*, 97 N. Y. 494; *Snow* v. *Fitchburg R. Co.*, 136 Mass. 552.

Defendant's main contention, however, is that, upon the arrival of a train from the south, this north end of the platform was not used by passengers, and that it had no reason to anticipate that it would be so used. Of course, it stands to reason that on such occasions that part of the platform would be used in part for the purposes of receiving and delivering mail, baggage, and express matter; but it was nowhere suggested, either in the pleadings, or on the trial, or in the requests to charge, that the plaintiff was not rightfully on this part of the platform, or that it was not rightfully used by the public, or that there was any distinction, in that respect, between this and any other part of the platform. On the contrary, it seems to have been assumed and conceded throughout the trial that this part of the platform was rightfully used by passengers and the public generally, precisely the same as any other part of it. Moreover, while there is very little direct evidence as to the use of this part of the platform by passengers on the arrival of trains from the south, yet it appears all through the testimony that it was used by bystanders by the license of the defendant, and by customers by its implied invitation, and it is conceded that plaintiff was lawfully there on this occasion. All persons having duties to perform inci-

dental to the departure and arrival of passengers, and all persons having business with the company on its premises at a station, are entitled to the same protection as passengers, or intended passengers, while there. The plaintiff was a customer of the defendant, within the essence and spirit of the rule, and was entitled to protection as such.

It is claimed that the damages ($10,000) are excessive. The verdict is certainly a large one. The immediate injury—a wound on the knee—seems, in and of itself, a comparatively small one. But it is claimed, and the evidence tended to prove, that this caused a nervous shock, which resulted in the development of heart disease, and in what the physicians called "traumatic neurosis," which, being translated from Greek into English, simply means a disease of the nerves caused by a wound; that these injuries are permanent, and have rendered the plaintiff a helpless invalid. The cause might seem inadequate to produce such serious consequences. It is one of the class of cases where there is a chance for "malingering," and where about the only available evidence tending to prove the connection of cause and effect, aside from chronological coincidence, is that of medical experts, which, it must be admitted, is often subject to the suspicion of dealing largely in doubtful speculation and surmise. But it is well known that there are many genuine cases of serious and permanent injuries resulting from what at first seem very trivial causes.

In this case the evidence tended to show that the plaintiff was, prior to this accident, a healthy, active woman; that immediately after the accident she was compelled to take to her bed, and has ever since been almost helpless, and has grown worse, rather than better; and, while suggestions were made that she was shamming, no substantial evidence was produced to support these assertions.

The expert evidence on behalf of the plaintiff was to the effect that these ailments were real, that they were the result of the injury complained of, and that they were permanent; and the defendant produced practically no evidence to rebut this. If the plaintiff's alleged present diseases are real, and are the proximate result of the injury, (and under the evidence we cannot say that such are not the facts,) the damages awarded are not so large as to warrant this court in saying that they are excessive.

A new trial was also asked on the ground of newly-discovered evidence, but, as this point is not argued, it must be deemed abandoned. We may say, however, that we have examined the affidavits on the subject, and are clearly of opinion that there was no error in refusing a new trial on that ground.

Order affirmed.

(Opinion published 57 N. W. Rep. 1058.)