HUDDLESTON *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL-

WAY COMPANY.

Opinion delivered May 10, 1909.

1.  CARRIERS—PASSENGER HIT BY MAIL SACK—PRESUMPTION.—Where a pas-
senger at a railway station was injured by being hit by a mail sack
thrown by mail clerks from a moving train, a presumption arises,
until the contrary is proved, that the injury was the result of the
negligence of the railway company. (Page 382.)

2.  SAME—DUTY OF RAILROADS.—While a railroad company is not primarily
liable for the negligence of a mail agent, it must use ordinary care
to protect persons lawfully upon its depot platforms against injuries
by mail sacks thrown from its trains, either by requiring the sacks to
be thrown at a certain place and by warning against the danger
therefrom, or by other means adapted to that purpose. (Page 382.)

3.  SAME—INJURY TO PASSENGER—INSTRUCTION.—Where a passenger, wait-
ing at a station for his train, was struck by a mail sack thrown from
a passing train, and there was evidence tending to prove that the
railway company had been negligent in not taking proper steps to
protect passengers from such danger, it was error to instruct the
jury to the effect that if the mail clerks were not negligent the de-
fendant was not liable. (Page 384.)

4.  TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.—Where, in an ac-
tion for injuries to a passenger struck by a mail sack thrown from
a passing train, there was no evidence that plaintiff's injuries were
caused by his flagging the train or by his having gone upon the
track, an instruction that he had no right to flag the train, or to
jump on the track for that purpose, was improper. (Page 384.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge;
reversed.

*McMillan & McMillan,* for appellant.

1.  Railroad companies should not permit mail bags to
be thrown from their trains at a place and in a manner calculated
to injure people rightfully on its premises. 136 Mass. 552; 49
Am. Rep. 40; 56 Minn. 345; 45 Am. St. R. 469; 97 N. Y. 494;
49 Am. R. 540. It was erroneous and prejudicial to submit a
question to the jury upon which there is no evidence. 63 Ark.
177; 70 Ark. 441; 74 Ark. 19; 78 Ark. 177; 80 Ark. 260; 115
S. W. 381. It is not necessary that the injured person should
have purchased a ticket; if he was rightfully on the platform,
that is sufficient. 56 Minn. 345; 45 Am. St. 469; 67 Ark. 47;

74 Ark. 610; 85 Ark. 326; Hutchinson on Car., §§ 557 to 561.

2.  When appellant proved that his injury was caused by the operation of a railway train, a *prima facie* case of negligence is made out against the company.  Kirby's Dig., § 6773; 80 Ark. 22; 63 Ark. 636.  Appellee could not avoid the statute by saying that the mail bags were thrown from the train by people not in its employ.  33 Ark. 816; 64 Ark. 364; 49 Ark. 535; 63 Ark. 636; 65 Ark. 235; 68 Ark. 171; 70 Ark. 481.

*E. B. Kinsworthy* and *Lewis Rhoton,* for appellee.

The injury was not caused by the "running of trains." Therefore, § 6773, Kirby's Digest, raising a presumption of negligence on the part of the railroad company, does not apply. 70 Ark. 481.  A railroad company is not liable for the negligent acts of United States postal clerks or agents upon its trains.  38 W. Va. 645.  It is not error to refuse to instruct the jury that the injury raised a *prima facie* case against the railroad company when the proof shows that the plaintiff was guilty of contributory negligence.  73 Ark. 548.  Appellant was a trespasser, and the company owed him no duty except not to injure him wantonly.  83 Ark. 300.

BATTLE, J.  J. W. Huddleston, complaining of the St. Louis, Iron Mountain & Southern Railway Company, says:

"That on the ...... day of March, 1908, a certain fast northbound passenger and mail train, commonly known as number twenty-eight, passed said station, Arkadelphia, at a high rate of speed, and from which train it was the practice and custom of defendant, and had been for a long time, to permit the mail clerk or agent to throw or eject from the mail car, which was attached to and a part of said train, a mail pouch or bag on to the platform of said station, in a manner and at a place which subjected the persons or person who might chance to be lawfully upon said platform to hazard and danger of injury.

"That, said plaintiff being then and there lawfully standing on said platform of defendant's depot, on said date aforesaid, in and about his proper business, and in the exercise of due care, and without negligence or fault on his part, yet the defendant, not regarding its duty to the plaintiff, and through the negligence of its servants, permitted and allowed said mail pouch or bag to

be ejected from said northbound passenger and mail train afore-
said while in motion, and while running at a high rate of speed,
and at such a place on said platform that it struck plaintiff on
the face and body, knocking him to the ground, breaking and
fracturing two ribs and scarring and disfiguring his face and
head.

"By reason of said injuries the plaintiff became sick and was
confined to his bed and home for some weeks, and has been disa-
bled from attending to his business, and incurred an expense of
. . . . . . . . . . . . dollars for medical service and nursing, and has
suffered great pain, to his damage in the sum of $2,000."

The defendant, St. Louis, Iron Mountain & Southern Rail-
way Company, denies that the plaintiff was injured by its care-
lessness or improper conduct or the carelessness of mail agents,
but alleges that he was injured by his own contributory negli-
gence.

The facts of the case are, substantially, as follows: The de-
fendant has a railway station on its line at Arkadelphia in this
State. The mail agents on its trains, for a long time, have been
in the habit of throwing mail sacks from the trains, while moving
rapidly, on the platform at this station, where persons lawfully
there frequently stand. There were no notices warning passen-
gers to look out for mail sacks thrown from the trains posted
there, or any other protection provided by the defendant against
injuries of persons on the platform by such sacks. On the 21st
day of March, 1908, about noon, plaintiff, Huddleston, went to
the depot at Arkadelphia to take the first train going to Little
Rock. He did not know the times of the arrival and departure
of trains. When he reached the depot, the window of the ticket
office was closed, and he purchased no ticket at that time, nor
did he learn when a train would arrive. He remained about
fifteen minutes, and then went a short distance from the depot to
a "lunch stand" to get a lunch, and while eating heard a train
coming, and ran out and onto the track and flagged it with his
hat, and then walked on to the platform and stood near the door
of the waiting room for white passengers, and while there a train
passed, moving very rapidly, and a mail agent threw a sack
therefrom while it was in rapid motion, which struck him,

knocked him down, and severely injured him, and the train moved on without checking its speed.

W. L. Craig testified: "Was mail clerk on defendant's train in March, 1908, and was on train that the mail was thrown off that hit Huddleston. Train was running pretty fast, and there was another man on train with me, and he made the catch of the crane and picked out the place, and when he gave me the word to throw it I threw. Always try to select place where there are no passengers, and where it will not injure any one. We select the place in front and try to throw the mail in time so as strike in this place. Am paid and controlled by the Government."

Garrett testified: "Am railway postal clerk, and remember the time when plaintiff was injured. We were running late that day, going at a pretty fast rate; takes quick work to make the catch and throw off the mail; asked Craig to make the delivery while I made the catch; I was to pick out the place; I looked down the track. There were people all along in north of the depot, and I told him to hold it until we passed the depot, and about the time we got to the north end of the depot I told him to throw it, and about this time I saw a man close—just did see a man on the ground make efforts like he wanted to get on, and here the pouch and sacks both hit him. The first I saw of this man he was right at the side of the train—just about the time I gave the orders to throw; looked forward and saw this was the only place unless we carried it above the tank."

The plaintiff requested and the court refused to instruct the jury as follows:

"1. If you find from a preponderance of the evidence that the plaintiff was injured by the operation of the defendant's train, it is presumed that the injury was negligent, and the burden in such case is upon the defendant to show that the injury was not the result of negligence."

And instructed the jury over the objection of the plaintiff, in part, as follows:

"5. If the jury believe from the evidence that the mail clerks, Craig and Garrett, whose duty it was to deliver the mail pouch at Arkadelphia, previous to throwing said mail pouch from the train investigated the situation of the platform, in order to

prevent hitting any of the parties standing on the depot platform selected a vacant place ahead, got ready and threw the pouch so as to fall in this vacant space, and that plaintiff suddenly stepped from behind and in front of the engine into this vacant space previously selected by said mail clerks, and that said mail clerks had proceeded too far in their effort to throw the pouch into such selected vacant space to withhold the same when discovering plaintiff's position, you will find for the defendant."

"9.  The jury are instructed that plaintiff has no right to flag defendant's train, and had no right to jump on track for that purpose."

The jury returned a verdict in favor of the defendant, and plaintiff appealed.

The instruction requested by the plaintiff and refused by the court ought to have been given.  There was evidence which tended to prove that the injury of the plaintiff was caused by the throwing of the mail sack and speed of the train.  In that case the presumption, until the contrary appears, is that it was the result of the negligence of appellee.  *Little Rock & Fort Smith Railway Company* v. *Payne,* 33 Ark. 816; *Tilley* v. *St. Louis & S. F. Ry. Co.,* 49 Ark. 535; *St. Louis, I. M. & S. Ry. Co.* v. *Neely,* 63 Ark. 636; *Little Rock & F. S. Ry. Co.* v. *Blewitt,* 65 Ark. 235; *Barringer* v. *St. Louis, I. M. & S. Ry. Co.,* 73 Ark. 548; *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 80 Ark. 19; *St. Louis, I. M. & S. Ry. Co.* v. *Puckett,* 88 Ark. 204.

The court erred in giving instruction numbered 5 over the objections of the plaintiff.

Under the evidence in this case, it was the duty of appellee, the railway company, to have used ordinary care to protect persons lawfully upon its platform against injuries by mail sacks thrown from its trains.  It could have done so by requiring the sacks to be thrown at a certain place and by notices posted in a conspicuous place warning persons, who should come on the platform, against the throwing of mail sacks at such place, or protected them by other means adapted to that purpose.  *Snow* v. *Fitchburg Rd. Co.,* 136 Mass. 552; *Galloway* v. *M. & St. P. Ry. Co.,* 56 Minn. 346; *Carpenter* v. *Boston, etc. Ry. Co.,* 97 N. Y. 494; 23 Am. & Eng. Encyclopedia of Law (2d Ed.) 742, note 6 and cases cited.

In *Carpenter* v. *Boston & Albany Railway Company,* 97 N. Y. 494, the court said:

"The practice which led to the accident was a familiar and usual one. It was proved by uncontradicted evidence that this method of discharging mail bags from the postal car upon the platform provided for passengers, and while they were upon it and exposed to injury, had prevailed for a long time, under circumstances from which notice to the defendant might be fairly implied, and with the actual knowledge of the defendant's agents in whose presence the act was frequently if not daily performed, and so far as appears without the slightest objection on their part. They were therefore chargeable with notice that the mail bags were likely to be thrown off in the same manner and under the same circumstances at any arrival of a postal car. By this knowledge the defendant was brought fairly within the rule which enjoins care not only on the part of itself and its servants, but also like care in preventing injury from careless or wrongful act of any other person who it permits to come upon its premises." Again it says: "Nor was it necessary in order to charge the defendant with the duty of care and vigilance that on some other occasion a like injury had happened. The act was itself dangerous. There was, under the circumstances of which the defendant had notice, a natural and probable connection between the act of throwing out a mail bag with its contents and the injury which actually happened. It could have been foreseen, and the defendant owed a duty to those who might probably be on the platform, either to prohibit the practice which made the place dangerous, or exclude the passengers until train time, or provide some other way for ingress to the car, or give notice to him that he must take care to avoid danger or in some other way use reasonable caution to prevent damage from danger of which it knew or ought to have known."

In *Shaw* v. *Chicago & Grand Trunk Railway Co.,* 123 Mich. 629, 634, the court said: "We think a fair statement of the law as established by the decisions is this: The railroad company is not primarily liable for the negligence of the mail agent, but it does owe the duty of not permitting dangerous habits of the agent in delivering heavy packages from the car in such manner as to endanger persons lawfully on its premises to

continue; and evidence of such a practice continued for a considerable period is notice to the company." See cases cited.

Instruction 5 entirely ignored the duty of appellee to persons lawfully on its platform.

Instruction numbered 9 and given over the objection of appellant should not have been given. There was no evidence that appellant's injury was caused by his flagging the train or having gone upon the railway track.

Reversed and remanded for a new trial.