No. 20,653.

CHARLES S. ERGENBRIGHT, *Appellee*, V. THE SAINT LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. RAILWAY COMPANY—*Engaged in Business in Kansas—Service of Summons.* Upon the testimony it is held that the defendant was engaged in business in Kansas and that a valid service of summons was made upon its agent.

2. SAME—*Negligence—Postal Agent Throwing Mail Sacks from Train —Liability of Railway Company.* A railroad company is not primarily liable for the negligence of a postal agent in throwing mail sacks from a moving train, but may become liable where it knowingly permits such agent to continue a custom or practice of delivering mail sacks at a station in such a way as to endanger those who may be lawfully at the place of delivery without doing what it can to prevent the continuance of the negligent practice.

3. SAME—*Negligence—Postal Agent—Insufficient Evidence to Bind Railway Company.* The evidence in the case does not support the findings of the jury that the defendant was negligent in knowingly permitting the United States postal agents to pursue a dangerous practice in discharging the mail sacks from the mail car at a station, and in failing to report a reckless discharge of the mail to the proper authorities.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed February 10, 1917. Reversed.

*W. P. Waggener, J. M. Challiss,* both of Atchison, and *S. H. Piper,* of Independence, for the appellant.

*O. P. Ergenbright,* and *T. S. Salathiel,* both of Independence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Charles S. Ergenbright against the St. Louis, Iron Mountain & Southern Railway Company to recover for personal injuries sustained while he was in the service of the company. The jury returned a verdict in favor of plaintiff for $5000 and from the judgment thereon the defendant appeals.

The first contention is that jurisdiction of the defendant

was not obtained by a valid service or other means. It appears that the defendant had a line of railroad which extended into Kansas a distance of two miles to the city of Coffeyville. In 1909 the company entered into an arrangement with the Missouri Pacific Railway Company for the transfer to the latter of that part of the road which extended into Kansas. Afterwards it ceased to file reports with the secretary of state and its right to transact business in the state was finally revoked on July 21, 1914. The injury occurred on July 30, 1914. There was testimony in behalf of the defendant to the effect that in the accounting of business, as between the defendant and the Missouri Pacific Railway Company, the line of division was at the state line; that each was a separate and distinct organization; and that W. H. Tester, on whom the service of process was made, was the agent of the Missouri Pacific Railway Company and not of the defendant. Other testimony, however, was to the effect that in dealing with the public Tester was held out by the defendant as its agent. In the folders, time-cards and advertising matter issued by the defendant, Tester was represented as its agent at Coffeyville. He testified that he acted for the defendant as well as the Missouri Pacific Railway Company in selling tickets and issuing bills of lading and that his duties as agent were substantially the same after the transfer of the property to the Missouri Pacific Railway Company as they had been before that time. The trains of the defendant were run through from Van Buren, Ark., to Coffeyville, without a break or change of control at the state line, and it appears that the trains were operated in Kansas by the defendant and that it actually did business there. The questions whether or not the defendant was doing business in Kansas and whether or not Tester was its agent were issues of fact which were determined by the court and it is reasonably clear that there was testimony to support the finding of the court that due service had been made.

The principal contention is that the evidence did not support the charge of negligence made against the defendant and that there was no basis in the evidence for the verdict of the jury. It appears that the plaintiff on the night of his injury was employed as a brakeman on a freight train of the defend-

ant which had taken the siding at Oolagah, Okla., to allow passenger and mail train No. 119, southbound, to pass. The tracks run north and south and the station is located west of the tracks and has a platform, at the north end of which a mail crane stood, the latter being about seventy-five feet north of the station building. The plaintiff, after having crossed over the tracks at a point nearly opposite the north end of the platform, was walking northward along the west side of the main track toward a switch about 800 feet distant which he intended to throw after the passenger train had passed, when he was struck near the neck and shoulders by the mail sacks thrown out of the mail car of the passenger train, which was moving at the rate of about fifty miles an hour. The mail sacks were discharged and the plaintiff was found about sixty feet north of the crane, with his feet about ten or twelve feet west of the rails. The plaintiff alleged that the postal employees had been in the habit of throwing mail sacks out at the station in a negligent manner and that with the knowledge of this practice the defendant had permitted it to continue for a long time. The night operator at the station, who had been employed about eight months, testified that it was his duty to go out after the mail train had passed and bring in the mail sacks, and among other things stated: "I think I have found sacks west of the ditch or depression I have spoken of in the weeds. Not very many times. Three, four or five times, not over six, I don't think." The ditch mentioned was a flat, sloping depression about ten or twelve feet wide extending along the west side of the track for drainage, and beyond this depression on the higher ground were some grass and weeds. The operator had told the agent that he had difficulty in finding the sacks. The postal employees testified that it was their duty to throw the sacks downward and outward just before reaching the crane upon being warned by three blasts of the whistle, and that it was good practice if the sacks could be thrown within a distance of sixty feet of the crane, depending somewhat on the speed of the train. There was testimony that the bottom of the car would be about four feet from the ground and about on a line with a man's shoulder; that to throw the sacks thirty feet from the track would not be good practice; and that as the rule re-

quired that the sacks be thrown downward and outward it would not be good practice to throw them twelve feet from the car on a level with the floor of the car. The jury found that complaint had been made by the operator who collected the sacks to the agent of the defendant as to the manner in which sacks had been thrown. There was also a finding that the negligence of the defendant on which the recovery was based was its failure to "report reckless discharge of mail to proper authorities."

It is insisted by the defendant that the finding was without any substantial support in the evidence and that there was no basis for holding the defendant liable for acts of one not in its employ and over whom it had no control. The one who threw the mail sacks which struck the plaintiff was not the servant or employee of the defendant and it is conceded that the doctrine of *respondeat superior* does not apply. He was an agent of the government and as to the manner of handling the mail was answerable to the United States and not to the defendant. A railroad company is not liable because of a single negligent act of the postal agent, but may become liable if it knows or should know of a custom or practice of the delivery of mail sacks in such a way as to endanger those rightfully at or near the place of delivery, without doing what it can to prevent a continuance of the negligent practice. The fact that the postal agent negligently threw the sack against the plaintiff on this occasion is not of itself sufficient to render the defendant liable.

In the early case of *Muster v. The Chicago, Milwaukee & St. Paul R'y Co.*, 61 Wis. 325, it was held that the negligent act of the postal clerk could not be imputed to the railroad company unless the company itself was negligent and it was added:

"We conclude that the mere act of the postal employee in throwing off the mail-bag at the depot, conceding it to have been a negligent act, was not negligence on the part of the railway company." (p. 331.)

In *Galloway v. Chicago, M. & St. P. Ry. Co.*, 56 Minn. 346, the basis of the liability of the railroad company for an injury occasioned by a postal agent was stated as follows:

"To render it liable, as negligent, for the negligence of the mail agent, this government employe must have practiced a dangerous method of discharging mail sacks on the platform at this station so habitually, or so frequently, as to charge the company, as part of its duty to its passen-

gers and others occupying its depot platform by its invitation or license, with notice, actual or implied, of his negligence or recklessness. While the railway company had no power to interfere with the mail agent in the discharge of his official duties, yet it was its right, as well as duty, to prevent him, while on its cars and on its premises, from continuing any negligent practice, of which it had notice, which was liable to cause injury to passengers and others lawfully there." (p. 347. Notes, 6 L. R. A., n. s., 581; 13 Ann. Cas. 78.)

The mail sacks, as we have seen, were thrown from a fast mail train which ran past the station at a rate of about fifty miles per hour. No claim is made that there was negligence as to the speed of the train on this occasion or at other times in passing the station. Neither is there any basis for a charge of negligence as to the place at which the sack was delivered. It was discharged about sixty feet from the mail crane and the rule of the postal department is that it is to be delivered near the crane. Plaintiff testified that the sacks were delivered from 250 to 300 feet away from the platform, but other witnesses stated that the sacks were delivered from fifty to sixty feet from the crane, and the jury found that it was about sixty feet. The testimony was that delivery of sacks within that distance of the crane from a fast-moving train was good practice. It appears that the plaintiff left the east side of the track where he might have walked with safety as far as the risk of danger from the delivery of mail sacks was concerned, and went over on the west side of the track where the mail sacks were to be thrown. He walked close to the mail crane, and he knew the purpose for which cranes were used. He testified that he did not know that mail was delivered from train No. 119, although he had been a brakeman upon that train. At the stations along the line danger notices which he had seen had been posted, stating: "All persons are warned not to be or remain on the depot platform while mail trains are passing. Beware of mail sacks or packages thrown from trains." The conductor of the freight train who was a witness in behalf of the plaintiff, testified that after the plaintiff crossed over to the west side of the track he walked along about as far from the rails as the mail crane stood, which was about eight feet, and that when he was picked up he was about the same distance from the track. The same witness at another time stated that the plaintiff was walking ten or twelve feet from the

49—99 KAN.

track and the testimony is that the trainmen found him lying about that distance from the track after the mail train had passed. It is plausibly argued that the plaintiff knew or should have known that mail was to be discharged from mail trains near the mail cranes; that he chose to walk in the place where the mail sacks were to be thrown; and that he assumed the dangers incident to the discharge of mail at that place. We will not dispose of the case upon that basis, but will determine it upon the theory that the company itself was not guilty of negligence. As we have seen, the company is not primarily liable and can be held responsible only upon the theory that it has customarily and without objection permitted the throwing of mail sacks by the postal agents in such a way as to endanger those lawfully at the places where they were thrown. Had a dangerous method been habitually followed with knowledge of the company, or had it continued so long as to be notice to the company? The testimony of the postal agents was that the sacks were thrown downward and outward in accordance with the directions of the postal authorities. They were not thrown where persons congregated nor where passengers were boarding or leaving trains. It is not claimed that sacks had ever been thrown upon or against any one at the station prior to the time when plaintiff was injured. The place selected for the discharge of the sacks was beyond the platform, which extended at least seventy-five feet north from the depot, and where there was little danger of injuring those who might have occasion to be at the station. In an attempt to show a dangerous practice of which the company had notice, testimony was offered to the effect that mail sacks had been delivered so that they rolled into the weeds at the side of the track. Notice of this method had been brought to the attention of the station agent. The night operator, who collected the sacks after delivery, testified that he thought sacks had been found in the weeds three or four times during the time he was employed at the station, a period of eight months, but not oftener than six times. The notice, or rather the complaint, which he made to the station agent was not that the sacks had been discharged so as to endanger persons who might be near the railroad but that they had gone into the weeds and were difficult to find. The weeds spoken of came

within about twelve feet of the track. Those who discharged the sacks were required to throw them outward so they would not roll under the trains. Throwing the sacks outward and downward at the proper angle from a rapidly moving train as the rules required would easily carry them across the twelve-foot space and into the weeds. Thrown in the most careful and proper method, they would roll some distance after striking the ground. The plaintiff himself testified that he had seen sacks roll or slide six or eight feet. The fact that the sacks were delivered farther from the mail crane at one time than at another does not necessarily imply an improper delivery or the carrying on of a dangerous practice. Testimony that sacks rolled beyond the cleared space of twelve feet and into the weeds is not proof of an improper or dangerous delivery. It did not require the company to anticipate that an accident like the one in question was liable to happen. Notice to the company that mail sacks had rolled into the weeds was not a notice that a dangerous method was in use by the postal agents, and the failure of the company to object to the method or to call upon the postal agents to adopt a different one can not be regarded as negligence on the part of the company. The findings of the jury that the defendant was negligent in knowingly permitting the postal agents to pursue a dangerous practice in discharging the mail sacks, and in failing to report a reckless discharge of the mail to the proper authorities, are not supported by the evidence. (*Southern Ry. Co. v. Rhodes,* 86 Fed. 422; *McGrath v. Eastern Ry. Co. of Minnesota,* 74 Minn. 363.)

The judgment of the district court will therefore be reversed and the cause remanded for a new trial.