NEWBERRY, Respondent, vs. MINNEAPOLIS, ST. PAUL &
SAULT STE. MARIE RAILWAY COMPANY and another,
Appellants.

*January 10—April 3, 1934.*

For the appellant Minneapolis, St. Paul & Sault Ste. Marie Railway Company there was a brief by *Hayes & Hayes*, attorneys, and *William A. Hayes* (and on motion for rehearing *John E. Palmer*) of counsel, all of Milwaukee, and oral argument by *William A. Hayes*.

For the appellant Schwenke there was a brief by *Frawley, Stolts & Tronsdal*, attorneys, and *Victor M. Stolts* of counsel, all of Eau Claire, and oral argument by *Mr. Stolts*.

For the respondent there was a brief by *W. H. Stafford* and *Harold E. Stafford*, both of Chippewa Falls, and oral argument by *Harold E. Stafford*.

The following opinon was filed February 6, 1934:

FOWLER, J. The appellant railway company claims that the court erred (1) in denying its motion for a directed verdict; (2) in failing to give due effect to the United States Postal Regulations; (3) in giving erroneous instructions; (4) in improperly receiving evidence; and (5) in denying its motion for a new trial. The appellant Schwenke claims that the court erred (6) in instructing the jury; (7) in refusing to change the findings of the jury respecting his negligence; and (8) in refusing to grant him a new trial.

(1) (2) The ground of these assignments is, in substance, that the railway company is required by the law to carry the mails; that it has no control over the postal employees; and that it cannot therefore be held responsible for

acts of postal employees in delivering them. The premises are correct, but the conclusion does not necessarily follow, although it is doubtless true as a general proposition. See Note I, 34 A. L. R. 520. But courts have in many cases concluded otherwise under circumstances similar to those here involved. When liability exists, it does not rest upon the doctrine of *respondeat superior,* but on violation of duty to the public. Railway companies owe to persons lawfully on depot premises the duty to use ordinary care to protect them from habitual dangerous practices of which they have knowledge, whether the danger be created by postal authorities delivering mail or otherwise. Note II, 34 A. L. R. 520. This court is committed to the rule last stated, although under the circumstances involved in the case so stating the company was absolved from liability because the mail was delivered at a place where it had not theretofore been delivered. *Muster v. Chicago, M. & St. P. R. Co.* 61 Wis. 325, 21 N. W. 223. A multitude of cases is cited in support of the rule in the A. L. R. note cited. Of these we refer to *Galloway v. Chicago, M. & St. P. R. Co.* 56 Minn. 346, 57 N. W. 1058; *Thomas v. Southern R. Co.* 173 N. C. 494, 92 S. E. 321; *Huddleston v. St. Louis, I. M. & S. R. Co.* 90 Ark. 378, 119 S. W. 280; *Louisville & N. R. Co. v. Baker,* 158 Ky. 224, 164 S. W. 799; *Louisville & N. R. Co. v. Glascow,* 179 Ala. 251, 60 South. 103. In the instant case the jury found habitual dangerous practice and knowledge thereof by the railway company, and also found the company negligent in failing to give warning to the public of the danger, and in failing to take steps to prevent the practice, each of which was considered negligence in one or more of the cases cited.

(3) The instruction complained of by the appellant company is not a statement of law, but of matters to consider in arriving at the answer to a question. It does not state

that any fact referred to was or was not proved, except as it says that "it seems that the practice had continued from the time the trains had stopped at that station to discharge the mail." The use of the word "practice" in the above connection is complained of, but plainly the practice of discharging the mail is referred to, and that had undisputably continued as stated. The instruction as a whole properly calls to the attention of the jury matters properly for consideration in arriving at their answer, and seems to us a fair summary of such matters.

(4) John Moore carried mail to and from the depot and postoffice. He saw the plaintiff immediately after he was hit by the mail pouch. He was an employee of the railway company, and was also paid by the postal department for his service in carrying mail. He was interviewed by counsel for the plaintiff and signed a written statement. This statement covered matters relating to the practice that had obtained in delivering mail from the moving train. It varied widely from his testimony at the trial. It was in the form of an affidavit. He denied having sworn to its truth and claimed he did not know the attorney who interviewed him was a notary. The attorney did not testify. It is claimed that introduction of the affidavit in evidence was improper.

The statement was admissible for impeaching purposes, whether it was sworn to or not, and the jury were at liberty to regard it as an unsworn statement if they believed Moore's statement respecting the jurat, and to give it such credence in view of the fact in that respect as they deemed it to be entitled. Moreover, no objection was made to the receipt of the writing when it was offered at the close of the examination of the witness adversely upon the trial. Nor was any request made that its effect be limited to impeaching purposes. We perceive no error in receiving the statement.

(5) The ground of this assignment is that the evidence is insufficient to warrant the findings of the jury which form the basis of the railway company's liability. It is suggested that the first of such questions put to the jury is threefold, and that if the evidence fails to support the finding as to any one of the three facts covered by it the answer of the jury cannot stand. The facts covered by the question are: "Had a custom existed of throwing off the pouches so they would come to rest at about the spot where plaintiff was injured, did the railway company know of the custom, and were the pouches so thrown as to be likely to strike persons on the platform?" The same suggestion is made to the second question relating to the railway company's negligence. The facts covered by this question are failure to give reasonable warning of danger to frequenters, failure to make reasonable effort to induce postal authorities to change the place of throwing off mail sacks, and negligently acquiescing in the continuance of the practice of throwing off the pouches where they were thrown. The trial judge was of opinion that the evidence supported the conclusion of the jury as to each one of the several facts thus covered. An employee of the railway company was also carrier of the mail to and from trains. He might have been required by the railway company to be stationed at the place of delivery when the mail train was passing and to warn persons in position of danger. And if the postal authorities changed the place of delivery at the suggestion of Schwenke it is fair to assume that they would have done so at the suggestion of the company. Counsel argues that the place of delivery as changed at the suggestion of Schwenke was no safer than the original one, but Schwenke thought otherwise, and it is not obvious why the jury could not agree with him rather than counsel. We are of opinion that the findings of the jury respecting the company's negligence, and those of ha-

bitual dangerous practice and the company's knowledge thereof, are supported by the evidence.

(6) The complaint here is against the concluding clause of the court's instruction to the jury in connection with the question: "Was Schwenke negligent in throwing the pouch at such a time and place and in such manner as might probably injure persons lawfully on the platform?" The court first instructed as to what might constitute negligence, and then went on to state what did not constitute negligence, saying that injury is no proof of negligence; that one may be injured through his own negligence; that one may be injured without negligence of anybody because of unavoidable accident; "or the circumstances of his injury may be such that after the injury a person could see how the injury could have been avoided if people knew as much about the danger after the accident as before." It is argued that the language quoted misled the jury into thinking that as it appeared the place of delivery was changed after the injury at Schwenke's suggestion and that the injury would not have occurred had the change been made before, Schwenke was negligent for not suggesting the change before. The language does not support such inference. It implies that one is not negligent because he can see after infliction of an injury how it might have been avoided had he appreciated the danger. We perceive nothing harmful to Schwenke in the language referred to.

(7) The ground of this assignment of error is that Schwenke's negligence is not established by the evidence. A rule of the postal service requires that "the utmost care should be taken in deliveries (of mail from trains) to avoid injury to persons, mail, equipment, or property." This rule required ordinary care on the part of Schwenke. We are of opinion that the jury were well warranted in finding that in throwing off mail when he could not see he did not take

ordinary care. The excuse he gave for throwing the pouch when he could not see was that the pouch contained first-class mail, that his duty required him to deliver such mail at the designated place of delivery, and that had he not thrown the pouch he would have had to carry it to the next station for return on the first west-bound mail train; that this would have required him to report the reason for his failure to deliver the pouch at Boyd, and subjected him to likelihood of discharge from the service for failure of duty. The jury may have regarded the suggestion of danger of discharge as without merit. It was as much his duty under the postal regulations to use "the utmost care" to avoid injury to persons on the platform as to deliver the pouch, and if under the circumstances delivery of the pouch was likely to cause personal injury the jury were justified in considering that the safety regulation should have controlled his action. The denial of the trial court of Schwenke's motion to change the answer of the jury was proper.

(8)· Assignment (6) not being well taken, and it being considered under assignment (7) that the findings as to Schwenke's negligence are supported by the evidence, no ground for granting a new trial appears.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on April 3, 1934.