LINDSAY, APPELLEE, *v.* THE BALTIMORE & OHIO RD. CO., APPELLANT.

(No. 674—Decided June 21, 1954.)

*Messrs. Anderson, Will & O'Donnell* and *Messrs. Young & Young,* for appellee.

*Mr. G. Ray Craig* and *Mr. T. Lamar Jackson,* for appellant.

CONN, J. The defendant has appealed to this court on questions of law from a judgment rendered in the Common Pleas Court in favor of plaintiff.

The action was brought to recover damages claimed to have been sustained by plaintiff by reason of the negligence of the defendant.

Plaintiff alleges in his third amended petition that the defendant for many years has operated a railroad through the village of Greenwich in an easterly and westerly direction at about right angles over Townsend Street in said village, there being at that point a separation of grades, the tracks of defendant being raised above the level of the street, with embankments on each side and a bridge with stone abutments supporting same, and that on December 20, 1950, defendant operated a train easterly through such village over Townsend Street, one car of which was used to carry United States mail.

Plaintiff alleges further that on said day he was walking in a southerly direction on the westerly sidewalk of Townsend Street; that, just as he had passed through the viaduct, a mail sack, thrown from the train, struck plaintiff and seriously and permanently injured him; and that for many years last past, and continuously to and including December 20, 1950, it

had been the practice of defendant, in the operation of its trains, to permit the throwing off of mail sacks from its trains near the west end of the bridge over Townsend Street, which mail sacks would then roll or fall into the street.

Plaintiff alleges that defendant was negligent in failing to provide a guard to prevent mail sacks from falling into Townsend Street when thrown from its moving trains; that no signal or warning was given plaintiff; that the defendant operated its train at a high and unlawful speed and in violation of the village ordinance; and that, with full knowledge of the use of the mail car in its train, defendant failed to exercise any supervision over the same.

In the answer of defendant, it is admitted that, at the time alleged, it was drawing a train of its cars in an easterly direction over the embankment and across the bridge at Townsend Street, and that one of the cars in its train was a United States mail car.

Defendant denies generally the allegations in plaintiff's third amended petition, and avers that, if plaintiff was struck by a mail sack ejected from such train, it was thrown by a United States postal clerk who was under the sole control of the United States government; that whatever injuries plaintiff may have received were not of the extent or seriousness as alleged; and that they were proximately caused by the United States mail clerk and not by defendant.

Six alleged errors of the trial court are assigned by defendant, which, more briefly restated, are as follows:

1. Error in failing to sustain defendant's motion for judgment and in submitting the case to the jury, in the absence of any negligence on the part of defendant, and, further, where the proximate cause of plaintiff's injury was the negligence of an employee of the

postal department of the United States government.

2. Error in submitting to the jury the element of speed, where there was no evidence of the speed of the train and no evidence that speed contributed to the accident.

3. Error in refusing to give a special charge requested by defendant before argument.

4. Error in permitting a medical witness, qualified as an expert, to testify with respect to conclusions reached by another medical expert, not appearing as a witness.

5. The amount of the verdict is not sustained by the evidence submitted, and was determined under the influence of passion and prejudice.

1. At the close of plaintiff's evidence, defendant moved that the case be arrested from the jury and that the jury be directed to return a verdict for the defendant. Defendant's motion was not renewed at the close of all the evidence. Defendant having proceeded to introduce its evidence following the overruling of its motion for a directed verdict thereby waived the issue raised by its motion.

Following the return of the verdict for plaintiff, defendant moved for judgment notwithstanding the verdict, on the law and the evidence, and subsequently moved the court to vacate the judgment that had been entered for plaintiff and to grant defendant a new trial. Each of these motions was overruled and judgment was entered for plaintiff.

It is the contention of defendant that, pursuant to the federal statutes with respect to the mandatory control of rairoads by the Postmaster General in the employment of railroads for the transportation of United States mail (Sections 481, 525, 526 and 527 of Title 39, U. S. Code), and the rules and regulations of the Interstate Commerce Commission, the inter-

vening negligent act of the postal clerk, done in the course of his employment, would be the proximate cause of any injury sustained by plaintiff, which would render the federal government liable, but not the defendant. This contention calls for a careful appraisal of the issues and the evidence.

The record discloses that the handling of United States mail and provision for a mail car suitable for that purpose, and also the receiving and distributing of mail from the train at a given postoffice, are all under the control of federal employees. However, in selecting the place where the mail for a particular postoffice should be discharged, it is the practice to consult the officers of the railroad and ascertain whether or not the point about to be selected is "O. K. from an operating standpoint" and whether "that point picked does not interfere with the operation of the railroad."

Furthermore, the evidence tends to show that for a number of years the point fixed by the action of the postal department and defendant for the discharge of mail bags from trains traveling in an easterly direction through the village of Greenwich was approximately 36 feet west of the overhead bridge at Townsend Street in said village, and that, at this point, a frame receptacle had been constructed by defendant to stop or contain the mail bags and keep them from going over the embankment and into Townsend Street. The evidence shows, without objection, that a larger receptacle had been constructed by defendant following plaintiff's injury, which receptacle was located at a point 50 feet farther west from the overhead bridge on Townsend Street.

It appears further from the record that, over a long period, mail bags discharged from the postal car attached to the train of defendant would miss the recep-

tacle, or would not otherwise be contained therein; that they would land at various places along the track of defendant and also over the embankment or westerly abutment of the bridge into Townsend Street; and that the stone abutment supporting the bridge over the street and the sidewalk underneath, on the westerly side of the street, were practically contiguous, as shown by defendant's exhibits introduced in the case.

It is quite uniformly held that where an object is thrown or falls from a moving train by reason of an act of one not in the employment of the railroad and which causes injury to a third person, no liability arises as against the railroad. 75 Corpus Juris Secundum, 351, Section 932.

The general rule of ''liability of a railroad company for injuries from negligence of a postal clerk on a train'' is concisely stated in an annotation in 34 A. L. R., 520, as follows:

''A railroad company, as a general rule, is not responsible for the negligent acts of a postal clerk placed upon a train by the federal government in charge of its mails, because such clerk is not an employee or agent of the railroad company, and therefore his acts are not its acts, and the doctrine of *respondeat superior* does not apply.''

Although a postal clerk on a train is not ordinarily regarded as an employee of the railroad company rendering the carrier liable for his negligent acts, yet where a mail clerk engages in dangerous practices over a period of time, such as throwing mail bags off of moving trains under circumstances likely to cause injury to third persons, the railroad company will be chargeable with knowledge of such dangerous conduct. 10 American Jurisprudence, 225 and 226, Sections 1369 and 1370; 75 Corpus Juris Secundum, 351, Section 932.

In 22 Ruling Case Law, 961, Section 196, the rule of

liability applicable here is stated in the following terms:

"The question of the liability of a railroad company for injuries of this nature arises frequently where the injury has been caused by mail bags thrown from moving trains by United States mail agents in the discharge of their official duties. It is generally held in such cases that the fact that the mail agent is not in the employ of the railroad company will not relieve it from liability if it appears that it is the custom to throw the bag from the moving train and the railroad company has knowledge of such negligent practice." Citing: 6 L. R. A. (N. S.), 581; L. R. A. 1917B, 916; 13 Ann. Cas., 78; 1917D, Am. & Eng. Ann. Cas., 541.

In the instant case, the liability of the railroad company does not arise by reason of the application of the doctrine of *respondeat superior*. Its liability is predicated on its own negligence in failing to adopt and employ reasonable means to prevent a practice or course of conduct which it is presumed to have had knowledge of and that such conduct would, in all probability, cause injury to third persons, as is disclosed by the record before us. 10 American Jurisprudence, 226, Section 1371.

We conclude that defendant's assignment of error is not well taken and should not be sustained.

2. The defendant urges, with much persuasion, that the trial court erred in submitting the issue of speed to the jury for the reason that plaintiff offered no evidence showing the speed of defendant's train and no evidence that speed was a contributing cause to the injury sustained by plaintiff.

The issue of speed was raised on the pleadings. Plaintiff alleged that defendant was operating its train "at a high, unlawful and dangerous rate of speed" when the mail bag was thrown from the car.

Plaintiff offered no evidence of a specific character on this issue.

It is urged that since defendant could have called the engineer or fireman, who would have had knowledge of the speed of the train, and did not do so, an inference arises thereby that if those employees of defendant had been called their testimony would have been favorable to plaintiff on this issue. This rule has wide application, but it is our opinion that it is inapplicable in this case. Plaintiff had the burden of proof on the issue of speed, as, under the elementary rule, he who affirms must prove.

Plaintiff testified that defendant's train was going pretty fast. This testimony is indefinite, has little probative value, and does not directly support the issue. In any event, the mail bag was thrown in such manner as to fall or roll over the southerly side of the embankment when plaintiff was emerging from the underpass and while he was walking southerly on the sidewalk, which was in close proximity to the stone abutment and embankment. Under these conditions, it appears to follow that the speed of the train was not proximately related to the fact that the mail bag struck plaintiff. In other words, it appears that the mail bag rolled over the embankment or fell from the top of the abutment, and that thereupon it struck plaintiff.

The trial court in its general charge erroneously submitted to the jury the issue of whether defendant operated its train at a negligent rate of speed at the time the mail bag was thrown from the train, by reason of the failure of proof. However, on the record before us, it does not appear that the error was prejudicial and, pursuant to Section 11364, General Code (Section 2309.59, Revised Code), defendant's assignment of error should not be sustained.

3. The defendant, in writing, before argument requested the court to charge the jury as follows:

"If from the evidence in this case you find that the defendant had no control over the discharge of mail from the mailcar by the mail clerk, and that the mail clerk was not in the employ of the railroad company, and was not in any way connected with it as agent, employee or otherwise, your verdict must then be for the defendant."

The rule is well established that when a party in a civil action requests the court, in writing, before argument, to give the jury a special instruction in writing, and if such instruction correctly states the law applicable to the case, the refusal of the court to do so is prejudicial error. *Bradley, an Infant,* v. *Mansfield Rapid Transit, Inc.,* 154 Ohio St., 154, 93 N. E. (2d), 672.

The record before us discloses that the postal authorities and the local postmaster decide where the mail may be discharged by the carrier from passing trains, subject to the place so selected being "O. K. from an operating standpoint" of the railroad.

It appears further that over a long period of time mail had been discharged from defendant's trains, moving easterly, at or near the overhead crossing at Townsend Street, and that from time to time mail bags had fallen or rolled over the embankment or abutment and into the street. It is inferable from the record that the defendant had notice or knowledge of these salient facts.

It follows that the requested charge was inapplicable to the undisputed facts in this case. If the charge as requested had been given, it, in effect, would have taken from the consideration of the jury relevant and material evidence on the issue of defendant's negli-

gence. It is our conclusion that this assignment is not well taken and should not be sustained.

4. The fourth assignment of error is predicated on the action of the trial court in permitting a medical witness of plaintiff, qualified as an expert in neurology and psychiatry, to testify in effect that he had arranged with a well-known nerve and brain surgeon of Cleveland, Ohio, to examine plaintiff, and to testify also that thereafter he consulted this medical expert and found that they were in agreement as to the character and extent of plaintiff's injuries.

We quote from the record as follows:

"* * * Did you select this Doctor Nozig, the neurosurgeon for this purpose? [Examination and consultation.] A. Yes, sir.

"Q. Did you have any consultation with Dr. Nozig after he examined Terry Lindsay? A. Yes, sir.

"Q. What were the results of your consultation with Dr. Nozig?

"Mr. Jackson: I want to object to that.

"Q. As far as your diagnosis was concerned?

"Mr. Jackson: It seems apparent to me, your honor, that they are using the diagnosis to arrive at a conclusion, which to me is not correct unless we have a chance to see Dr. Nozig.

"Court: Overruled.

"Mr. Jackson: Exception.

"Q. You may answer the question, doctor? A. Dr. Nozig and I talked it over and we both agreed to some degree of post-traumatic encephalopathy and possibly some spinal cord or spinal root injury of the lower cervical and upper thoracic spinal roots and we made certain recommendations where that should be done.

"Q. I don't want you to give Dr. Nozig's diagnosis? A. We were in agreement on it.

"Q. In other words, Dr. Nozig confirmed the diagnosis and agreed with you?

"Mr. Jackson: We object to that.

"Court: Sustained.

"Mr. O'Donnell: Exception."

Later, in the testimony of this expert witness, he was asked to give his opinion on whether there was any connection between plaintiff's complaint of pain in the calves of his legs "and the condition of post-traumatic encephalopathy." The witness answered, "no," and then volunteered the statement that Dr. Nozig and he "both felt that it would be from the spinal cord."

The broad general rule excluding hearsay evidence is elementary and the reasons supporting an objection to evidence of this character require the citation of no authority. There are some exceptions to the general rule. However, the issue here is not within the exceptions. For an extended consideration and citation of authorities see 17 Ohio Jurisprudence, 276, Section 211. See, also, *Walter* v. *Bowling Green,* 16 C. D., 756, 5 C. C. (N. S.), 516; 17 Ohio Jurisprudence, 289, Section 219; *Salko, Admx.,* v. *Metropolitan Life Ins. Co.,* 52 Ohio App., 367, 3 N. E. (2d), 664.

It is also uniformly held that the admission of hearsay evidence, when objected to, "is ground for reversal if such evidence is of a nature to be damaging to the adverse party." 4 Ohio Jurisprudence (2d), 102, Section 881.

We call attention to the early case of *James Wilson & Co.* v. *Barkalow,* 11 Ohio St., 470, and the following statement of the law of the case in the second paragraph of the syllabus:

"Where hearsay evidence was objected to, but permitted to go to the jury, the judgment will be re-

versed, unless it *manifestly appear* that its admission could not have prejudiced the party against whom it was offered.''

The character and extent of plaintiff's injuries were put in issue by general and special denials in the answer of defendant. It is clear from the evidence that plaintiff's injuries were largely of a subjective nature, as disclosed by the extended expert testimony of the neurologist called by plaintiff, and also lay witnesses. Defendant claims that the evidence tends to show that plaintiff, following his unfortunate injury, lived the life of a normal boy. This contention is challenged and there is some evidence supporting plaintiff's claim of serious injury.

A reviewing court may not usurp the functions of a jury. Where substantial justice has been done, the court, on review, must disregard errors, under the mandatory provisions of Section 11364, General Code (Section 2309.59, Revised Code).

Counsel for plaintiff, in oral argument, contended that if the introduction of the evidence now under consideration was erroneous, it could not have been prejudicial. We note, however, that no further consideration was directly given this fourth assignment of error in plaintiff's brief, and no citation of authority in support of counsel's oral argument.

We call attention to the recent case of *Hallworth v. Republic Steel Corp.*, 153 Ohio St., 349, 91 N. E. (2d), 690. The court considered the prejudicial effect of the erroneous admission of certain evidence, in the light of the provisions of Section 11364, General Code. We refer particularly to the opinion of the court, Taft, J., at pages 358 and 359.

In view of the state of the record and the importance of the sharply controverted issue as to the amount of damages, we have reached the conclusion

that it does not appear that the admission of such evidence could not have prejudiced the defendant. By reason of the situation presented, it follows that the judgment of the trial court must be reversed.

As the case must be remanded for a new trial and probably will be retried, it becomes unnecessary to pass on defendant's fifth assignment of error.

*Judgment reversed.*

FESS and DEEDS, JJ., concur.

FESS, J., concurring. Railroads are not primarily liable for the negligence of postal employees. They are in no sense servants or employees of the railroad. The only ground upon which the railroad is held liable for their acts is that they travel on the railroad's cars, and by reason of that fact have it in their power, by dangerous practices, to injure those who may lawfully be in close proximity to the railroad, and to whom the company owes a duty of exercising ordinary care to protect from injury by reason of the passage of its trains, and that the railroad has without objection suffered such mail clerks to indulge in dangerous practices. The basis of liability of the railroad as disclosed by the so-called "mail bag cases" is not the doctrine of *respondeat superior* but is the sufferance of a practice dangerous to those in proximity to its tracks and to whom it owes the duty of protection from injury. *Huddleston* v. *St. Louis, Iron Mountain & Southern Ry. Co.,* 90 Ark., 378, 119 S. W., 280; *Missouri Pacific Rd. Co.* v. *Angus,* 188 Ark., 300, 65 S. W. (2d), 543; *Missouri Pacific Rd. Co.* v. *Newton,* 205 Ark., 353, 168 S. W. (2d), 812; *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Warrum,* 42 Ind. App., 179, 82 N,

E., 934, and 84 N. E., 356; *Lewis* v. *Pennsylvania Rd. Co.*, 95 Ind. App., 19, 165 N. E., 774, and 169 N. E., 68; *Louisville & N. R. Co.* v. *Daniels*, 135 Miss., 33, 99 So., 434, 34 A. L. R., 516; *Newberry* v. *Minneapolis, St. Paul & S. S. Marie Ry. Co.*, 214 Wis., 547, 252 N. W., 579. Cf. annotation, 34 A. L. R., 520; *Norris* v. *Chicago, M., St. P. & P. R. Co.*, 74 S. D., 271, 51 N. W. (2d), 792; and *Missouri Pacific Rd. Co.* v. *Shores*, 209 Ark., 539, 191 S. W. (2d), 580 (cake of ice falling from troop train). 75 Corpus Juris Secundum, 351, Section 932; 44 American Jurisprudence, 701, Section 467.

The "mail bag cases" adopt the principle that to passengers and others lawfully upon railroad premises such as the platform, the railroad has the duty to protect such persons from injury by warning or otherwise of a dangerous practice actually or constructively known to the railroad. The principle has been extended to persons lawfully on the streets and highways in the proximity to the tracks. *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Warrum, supra; Missouri, Pacific Rd. Co.* v. *Newton, supra; Missouri, Kansas, R. Co.* v. *Ashlock* (Texas, 1940), 136 S. W. (2d), 943; 75 Corpus Juris Secundum, 434, Section 986. The principle has also been applied to injury received by a person from a bundle of newspapers thrown from a moving train by an employee of a news company, on proof of the existence of a custom known to the railroad of throwing newspapers at the place where the injury occurred. *Dwyer* v. *President*, 17 App. Div., 623, 47 N. Y. Supp., 1135; *Clifford* v. *New York Central & Hudson Rd. Co.*, 111 App. Div., 809, 97 N. Y. Supp., 954.

In the instant case there is no evidence tending to show that the defendant took any measures by remonstrance or otherwise to prevent the continued practice of throwing mailbags down the embankment

and into the street. Although a carrier is required to exercise the highest degree of practical care toward passengers on its trains as well as upon its premises made available for passengers (*Jones* v. *Youngstown Municipal Ry. Co.*, 133 Ohio St., 118, 12 N. E. [2d], 279; contra, *Taylor* v. *Pennsylvania Co.*, 50 F., 755) and ordinary care toward persons other than passengers lawfully upon its premises, upon reason and logic the same duty to exercise ordinary care should be imposed upon the railroad toward persons upon a street in proximity to its tracks.

The evidence fails to disclose that either the speed of the train or the failure to provide an adequate receptacle to catch the mailbags had any causal connection with injury. Neither of these alleged items of negligence should have been submitted to the jury. In my opinion, the jury should have been instructed that if it found from the evidence that the mailbag alleged to have injured the plaintiff was thrown from the mail car by a postal employee, then the defendant would not be liable for any negligent act of such postal employee, but if it should find by a preponderance of the evidence that the mail clerks had been for some time accustomed to throw mailbags from the mail cars in such manner that they would roll into the street and that the defendant, through its agents and employees, had actual knowledge of such practice, or that such practice had continued for such length of time, prior to the injury alleged to have been sustained by the plaintiff, that the defendant could or should have known of such practice, and that the defendant made no objection thereto, and if it further find that such conduct was the proximate cause of plaintiff's injury, in such event its verdict should be for the plaintiff. Cf. *Missouri Pacific Rd. Co.* v. *Newton, supra.*

In the light of the evidence of the continuance of the dangerous practice without remonstrance on the part of the defendant, the defendant's special request to charge was properly refused.